DeVALK LINCOLN MERCURY, INC., an Illinois corporation, Harold G. DeValk, and John M. Fitzgerald, Plaintiffs,

v.

FORD MOTOR COMPANY, a Delaware corporation, Ford Marketing Corporation, a Delaware corporation, Ford Motor Credit Company, a Delaware corporation, and Ford Leasing Development Company, a Delaware corporation, Defendants.

No. 81 C 4072.

United States District Court, N.D. Illinois, E.D.

Nov. 10, 1982.

Nicholas G. Dozoryst II, Abraham Brustein, Chicago, Ill., for plaintiffs.

Aaron J. Kramer, A. Eric Arnold, Frederick J. Sperling, Schiff, Hardin & Waite, John M. Carroll, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

This case involves claims arising under the Automobile Dealer's Day in Court Act, 15 U.S.C. § 1221 et seq. (1976) (Counts I & II), the Clayton Act, 15 U.S.C. § 12 et seq. (1976) (Count VII), and the Robinson-Patman Price Discrimination Act, 15 U.S.C. § 13 (1976) (Count VIII). The complaint also contains state law claims for breach of contract (Count III), misrepresentation (Count IV), breach of fiduciary duty (Count V) and civil conspiracy (Count VI). Various defendants[1] have moved under Fed.R. Civ.P. 12(b)(6) for dismissal of parts of Counts I & II and all of Counts V and VI.

In Counts I & II, Plaintiff DeValk Lincoln Mercury, a corporate automobile dealership and Plaintiffs Harold DeValk and John Fitzgerald, owners of the dealership stock, complain that Ford Motor Company (Counts I and II), Ford Motor Credit Company and Ford Leasing Development Company (Count II) violated the Dealer's Day in Court Act (the "Act"). The Act authorizes suits by an automobile dealer against an automobile manufacturer for the failure of the manufacturer to act in good faith in performing or complying with terms or provisions of their franchise agreement, or in terminating, canceling or not renewing the franchise.

■ All three defendants have moved to dismiss the claims of the individual plaintiffs, Harold DeValk and John Fitzgerald,

---

1. Pursuant to stipulation, Ford Marketing Corporation has already been dismissed from this suit.

from Counts I and II. Defendants assert that the Act authorizes suits only by automobile "dealers," that individual shareholders of the corporate dealership are not dealers within the meaning of the Act, and that therefore those plaintiffs must be dismissed because, on the face of the complaint, they lack standing to sue.[2]

Defendants have cited various cases which they claim support their motion. This Court disagrees. In each case cited by defendants and similar cases, individual plaintiffs were dismissed in response to a motion for summary judgment under Fed. R.Civ.P. 56 or upon review of a full evidentiary record.[3] Thus, the court was able to consider affidavits, depositions and other evidentiary material in determining whether the individual plaintiff fell within the statutory definition of "dealer." In the instant case, on the other hand, this Court has before it only the pleadings of the parties, making dismissal of the individual plaintiffs' claims improper. *Lewis v. Chrysler Motors Corp.*, 456 F.2d 605, 606–607 (8th Cir.1972); *Schmitt-Norton Ford, Inc. v. Ford Motor Co.*, 524 F.Supp. 1099, 1107 (D.Minn.1981); *accord, Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). For this reason, the motion to dismiss the claims of plaintiffs Harold DeValk and John Fitzgerald from Counts I and II is denied.

In addition to joining the latter motion, Defendant Ford Motor Credit Company (Ford Credit) seeks to be dismissed from Count II of the complaint as to all plaintiffs. Ford Credit contends that § 1222 of the Act authorizes suits only against an automobile "manufacturer" and that Ford Credit is not a manufacturer within the meaning of the Act.

The term manufacturer is defined in § 1221(a) of the Act as:

[A]ny person, partnership, corporation, association, or other form of business enterprise engaged in the manufacturing or assembling of passenger cars ... including any person, partnership, or corporation which acts for and is under the control of such manufacturer or assembler in connection with the distribution of said automotive vehicles.

The definition is a broad one, and cases interpreting it have properly recognized that there exist situations in which one not a manufacturer in the traditional sense may nonetheless fall within its scope. For example, if a nonmanufacturer is but an "instrumentality" of the manufacturer, in the sense that "instrumentality" is used in corporation law, that entity may properly be sued under the Act. *Volkswagen Interamericana, S.A., v. Rohlsen*, 360 F.2d 437, 441–442 (1st Cir.1966). Similarly, applying general agency principles, if a nonmanufacturer is subject to the manufacturer's control or right to control, a suit against the nonmanufacturer may proceed. *Id.*[4] The ra-

---

**2.** The Act defines an automobile dealer as:

any person, partnership, corporation, association, or other form of business enterprise resident in the United States or in any Territory thereof or in the District of Columbia operating under the terms of a franchise and engaged in the sale or distribution of passenger cars, trucks, or station wagons.

15 U.S.C. § 1221(c) (1976).

**3.** *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429 (9th Cir.1979) (affirming the district court's grant of summary judgment for individual dealer); *Vincel v. White Motor Corp.*, 521 F.2d 1113 (2d Cir.1975) (same); *Conroy Datsun Ltd. v. Nissan Motor Corp In USA*, 506 F.Supp. 1051 (N.D.Ill.1981) (motion for summary judgment); *Milburn v. Ford Motor Co., Inc.*, 437 F.Supp. 7 (E.D.Okl.1977) (motion for summary judgment); *Moorehead v. General Motors*

*Corp.*, 442 F.Supp. 873 (E.D.Pa.1977) (motion for summary judgment).

**4.** One court has even gone beyond the instrumentality and agency theories and found that a subsidiary of a major automobile manufacturer was subject to the Act as a matter of law. In *Colonial Ford, Inc. v. Ford Motor Co.*, 592 F.2d 1126 (10th Cir.1979), the Tenth Circuit held that control by the manufacturer was "conclusively established by a showing that Ford Motor Credit was a wholly owned subsidiary of Ford Motor [the manufacturer] and that its involvement with Colonial [the dealer] was exclusively for the purpose of facilitating the distribution of automobiles manufactured by its parent." *Id.* at 1129. Thus, it was found to be unnecessary to determine whether the relationship of the parent-manufacturer actually placed the subsidiary under the parent-manufacturer's

tionale for construing § 1221(a) to encompass nontraditional manufacturers is that such an approach is necessary to enforce the broad remedial purposes of the Act. The Act was designed to curtail coercion and intimidation of retail dealers by manufacturers made possible because of the parties' economic inequality. *See Colonial Ford, Inc. v. Ford Motor Co.,* 592 F.2d 1126, 1129 (10th Cir.1979). This goal easily could be thwarted, however, by manufacturers who transacted business through alter-egos, agents or wholly owned subsidiaries. In order to avoid such a result, the possibility must exist that nontraditional manufacturers may be found to fall within § 1221(a). *See Volkswagen Interamericana, S.A.,* 360 F.2d at 441; *Colonial Ford, Inc.,* 592 F.2d at 1129.

■ In the instant case, the plaintiff alleges that Ford Credit provided financing to facilitate the sale of Ford manufactured vehicles through plaintiff's dealership. This assertion (which must be assumed to be true at this stage of the proceedings) and the reasonable inferences to which it gives rise, are sufficient to state a claim against Ford Credit. The allegations indicate, at the least, possible proof of an agency relationship between Ford Motor Company, the manufacturer, and Ford Credit, the defendant, in the distribution of Ford manufactured vehicles.

Ford Credit next contends that even if it is a manufacturer within the meaning of the Act, it cannot be subjected to liability because it is not a signatory to the written franchise agreement and, in this circuit, only a signatory may be held liable under the Act. Ford Credit cites *Lawrence Chrysler Plymouth, Inc. v. Chrysler Corp.,* 461 F.2d 608 (7th Cir.), *cert. denied,* 409 U.S. 981, 93 S.Ct. 317, 34 L.Ed.2d 245 (1972), in support of its contention.

This Court does not agree with Ford Credit's reading of the case law. In *Lawrence,* the Seventh Circuit did not find that a nonsignatory to a franchise agreement

may never be found liable under the Act. Rather, the Court adopted the reasoning of *York Chrysler-Plymouth, Inc. v. Chrysler Credit Corp.,* 447 F.2d 786 (5th Cir.1971) wherein a suit *was* permitted against a nonparty to the franchise agreement. The Fifth Circuit refused to impose liability primarily because, in analyzing the evidence regarding the relationship between Chrysler Corporation and Chrysler Motors, the two relevant parties, the Court found that there was "no showing that would make either responsible for the acts of the other on an agency theory." In light of this and the fact that, by all indications, the two parties were "separate legal entities each operating in its own sphere," the Court concluded that "only the one which has entered into a franchise agreement could be held accountable for performing or complying with it." *Id.* at 613. *See also Marquis v. Chrysler Corp.,* 577 F.2d 624, 630 (9th Cir.1978) *citing Stansifer v. Chrysler Motors Corp.,* 487 F.2d 59, 64 (9th Cir.1973) (manufacturer may be liable even if nonparty to franchise only upon showing that party contracting with dealer is agent of manufacturer of "straw man" erected to insulate manufacturer from liability); *Evanston Motor Co., Inc. v. Mid-Southern Toyota,* 436 F.Supp. 1370 (N.D.Ill.1977) (importer, a nonsignatory to franchise agreement, is liable only if evidence indicates that importer had actual or apparent authority under agency theory to bind manufacturer or was alter ego of manufacturer).

■ Thus *Lawrence* and the above-cited cases do not prevent liability from being imposed on Ford Credit simply because it was not a signatory to the franchise agreement. The case law simply sets forth the proof required for a finding of liability against such a party. Therefore, defendant Ford Credit cannot support its motion to dismiss Count II on the above-mentioned grounds.

Defendant Ford Credit has also moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss

control. Because this Court believes that plaintiff has pled sufficient facts to state a claim against Ford Credit under the narrower analy-

sis discussed in *Rohlsen,* it is unnecessary at this stage to determine whether the Court would or would not follow the 10th Circuit.

Counts V and VI of the complaint. Count V alleges that a fiduciary relationship existed between the Plaintiffs and Defendant Ford Credit and others. Plaintiffs claim that the fiduciary relationship arose out of sales agreements entered into by Ford Motor and plaintiffs, and that Ford Credit facilitated and implemented these sales agreements by supplying wholesale financing to the plaintiffs. The sales agreements, it is claimed, created the alleged fiduciary relationship by placing plaintiffs substantially under the control of Ford Credit and others. This allegedly caused plaintiffs to rely on the latter parties' utmost good faith and fair dealing. Plaintiffs assert that despite this relationship, Ford Credit and others committed various acts which breached the duties imposed upon them.

Count VI realleges the essential elements of Count V and further alleges that Ford Credit and others conspired to violate the fiduciary duties imposed upon them by the sales agreements.

As with Counts I and II, this court must view defendant's motion to dismiss Counts V and VI in light of the generally liberal principles of pleading embodied in the Federal Rules. Unless it appears beyond a doubt that the plaintiffs can prove no set of facts entitling them to relief, the motion must be denied. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This Court has examined Illinois law, which governs the state law claims of Counts V and VI, and has concluded that the allegations are sufficient to withstand a motion to dismiss under Fed.R.Civ.P. 12(b)(6).

Under Illinois law, a fiduciary relationship is created "where confidence is reposed on one side and resulting superiority and influence is found on the other." *Herbolsheimer v. Herbolsheimer,* 60 Ill.2d 574, 577, 328 N.E.2d 529, 530 (1975). Moreover, Illinois courts have refused to set definite and precise boundaries within which a fiduciary relationship may be found to arise. *See Illinois Rockford Corp. v. Kulp,* 41 Ill.2d 215, 242 N.E.2d 228 (1968).

■ This Court has already discussed the allegations upon which plaintiff based his fiduciary relationship claim. Viewing these allegations in light of Illinois law, this Court concludes that Count V states a claim for breach of a fiduciary duty sufficient to withstand Ford Credit's 12(b)(6) motion. Therefore, the motion is denied.

■ Similarly, defendant's 12(b)(6) motion to dismiss Count VI must also be denied. Under Illinois law, a civil conspiracy arises where two or more persons combine to accomplish by concerted action either a lawful purpose by unlawful means or an unlawful purpose by lawful means. *De L'Ogier Park Development Corp. v. First Federal Savings and Loan Association of Berwyn,* 6 Ill.App.3d 807, 286 N.E.2d 583 (1972). Conspiracy associates all the defendants with the unlawful acts done and may be considered as an aggravation of the unlawful acts. *Ammons v. Jet Credit Sales, Inc.,* 34 Ill.App.2d 456, 181 N.E.2d 601 (1962).

Plaintiffs in the instant case incorporate their Count V claim for breach of a fiduciary duty into Count VI and further allege that Ford Credit and others acted jointly, in concert and conspiracy with each other, to breach the duty alleged in Count V. Since the allegations of Count V sufficiently allege an actionable wrong under Illinois law, the additional claim for conspiracy withstands defendant's motion to dismiss.

■ Defendant also contends that De-Valk and Fitzgerald must be dismissed from Counts V and VI of the complaint because they cannot recover for harm suffered as shareholders of the dealership stock where the corporate dealership has taken legal action in its own name. However, this claim, like the others, must be denied. The facts alleged in the complaint and reasonable inferences taken from those facts sufficiently state a claim by DeValk and Fitzgerald, not as corporate shareholders, but as individuals. Even if the allegations are marginal, dismissal is improper where the allegations viewed as a whole indicate the possibility of a claim. *Asay v. Hallmark Cards, Inc.,* 594 F.2d 692 (8th Cir.1979). Moreover, because granting a

12(b)(6) motion results in a determination on the merits at an early stage, all inferences favorable to the plaintiff will be drawn. *Mortensen v. First Federal Savings & Loan Association,* 549 F.2d 884 (3rd Cir.1977). Thus, Ford Credit's motion to dismiss De-Valk and Fitzgerald from Counts V and VI is denied.

IT IS SO ORDERED.