703 F.2d 284
 1983-1 Trade Cases 65,295
 OLSON MOTOR COMPANY, a Minnesota corporation; Ray A. Olson
and Donna M. Olson, individually and d/b/a Olson
Motor Company, Appellants,
v.
GENERAL MOTORS CORPORATION, a Delaware corporation; and
General Motors Acceptance Corporation, a New York
corporation, Appellees.
OLSON MOTOR COMPANY, a Minnesota corporation; Ray A. Olson
and Donna M. Olson, individually and d/b/a Olson
Motor Company, Appellees,
v.
GENERAL MOTORS CORPORATION, a Delaware corporation,
General Motors Acceptance Corporation, a New York
corporation, Appellant.
 Nos. 82-1198, 82-1267.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 13, 1982.
Decided March 28, 1983.
 
 Fred J. Pain, Jr., P.C., Scottsdale, Ariz., and Richard A. Williams, Hvass, Weisman & King, Minneapolis, Minn., for appellants/cross appellees.
 Clay R. Moore, Mackall, Crounse & Moore, Minneapolis, Minn., for appellee and cross-appellant General Motors Acceptance Corp.; Otis M. Smith, General Counsel, and Stephen Selander, Detroit, Mich., of counsel.
 Before ROSS and FAGG, Circuit Judges, and SCHATZ, District Judge.*
 ROSS, Circuit Judge.
 
 
 1
 On November 4, 1970, Olson Motor Company and Ray and Donna Olson filed this civil action against General Motors (GM) and General Motors Acceptance Corporation (GMAC) under the Automobile Dealers' Day in Court Act, 15 U.S.C. Secs. 1221 to 1225 (1982), and under federal antitrust law. The case is presently before this court on appeal by Ray Olson and Olson Motor and on cross appeal by GMAC.
 
 Facts
 
 2
 Prior to 1961, Ray Olson became a GM dealer as a stockholder in his father's Cadillac-Oldsmobile dealership, Olson Motors, Inc. in Albert Lea, Minnesota. In 1961, Ray's father, Andy Olson, purchased Ray's stock in Olson Motors, Inc. and leased a portion of the premises to Ray, doing business as Downtown Motors. Through this arrangement Ray secured a Pontiac franchise.
 
 
 3
 In 1969, the Olson Motor Company, a new corporation wholly owned by Ray Olson, entered into dealership agreements with the Pontiac, Oldsmobile and Cadillac Divisions of General Motors. Olson Motor operated from a new larger facility than its predecessors. Ray Olson experienced financial difficulties and in October 1969, GMAC, with whom Ray Olson had a financing agreement, determined that Olson Motor was "out of trust" on its agreement and impounded the company's new and used car inventory in which it had a security interest.
 
 
 4
 In early November 1969, Ray Olson obtained loans from two businessmen, Chance and Lebert, of approximately $60,000. This sum was paid to GMAC to secure release of the used car inventory to Olson Motor. Subsequently, Chance and Lebert bought out Olson's equity in the business for $5,000 plus a forgiveness of the $60,000 loan. In 1970 Chance and Lebert sold the business assets to Krueger for $37,000. The sale was contingent upon the granting of a dealer agreement by the three General Motors divisions. Oldsmobile, Pontiac and Cadillac entered into new dealer agreements with Krueger after Ray Olson agreed to terminate the Olson Motor Company franchises and released each of the three GM divisions from all claims.
 
 
 5
 Plaintiffs brought this action against GM and GMAC under the Dealer's Day in Court Act[1] and federal antitrust law alleging that GM failed to provide adequate assistance or advice to help Ray Olson manage his dealership which resulted in its failure. Plaintiffs argue that the failure of Olson Motor was a direct result of GM's conduct in dictating the capital structure and financing needs of Olson Motor. Plaintiffs further claim that GMAC actively participated in this scheme through its financing arrangements and subsequent impoundment of plaintiffs' automobile inventory.
 
 
 6
 Prior to trial, GM and GMAC filed motions for summary judgment arguing that the releases signed by Ray Olson acted to absolve GM and GMAC of any liability. The district court[2] on April 17, 1981, denied the motions and concluded that the validity and effect of the releases were issues for trial. The court also refused to grant summary judgment on the issue of whether GM could be held liable for the acts of GMAC, holding that the question of agency was one for jury resolution. Additionally, the court held that GMAC was not independently liable under the Dealer's Act because GMAC was not a party to the franchise agreement. The court held that GMAC could be held liable only upon a finding by the jury of an agency relationship between GM and GMAC.
 
 
 7
 The case proceeded to trial and on August 12, 1981, at the close of plaintiffs' case the district court dismissed Ray and Donna Olson as plaintiffs on the grounds that they lacked standing to sue. The jury returned a special verdict form and found that GM failed to act in good faith in terminating Olson's franchise but that the bad faith action was not the proximate cause of plaintiff's damages. Further, the jury found that Ray Olson had released GM from all claims brought in the present action. The jury also concluded that GMAC was acting as the agent of GM in repossessing the automobile inventory and that that bad faith conduct caused plaintiff's damages in the amount of $558,530.00.
 
 
 8
 The district court on the basis of the jury's findings entered judgment for defendants. The court explained its ruling in a memorandum dated January 4, 1982. The court held that the jury's finding that GMAC acted as GM's agent mandated the conclusion that plaintiff's release of GM acted also to release GMAC.
 
 
 9
 Plaintiffs appeal asserting the following: (1) that GMAC is independently liable under the Dealer's Act; (2) that the release of GM did not act to release GMAC; (3) that plaintiff is entitled to a new trial against GM based on a change of law; and (4) that Ray Olson had standing to sue under the Dealer's Act. GMAC filed a cross-appeal seeking additional relief only in the event of our reversal of the district court's judgment. For the reasons set forth in this opinion we affirm the judgment of the district court and accordingly decline to reach the issues raised by the cross-appeal.
 
 I. GMAC's independent liability
 
 10
 Plaintiffs argue that GMAC is an "automobile manufacturer" within the meaning of the Dealer's Act and is thereby independently liable under the Act for its bad faith repossession of plaintiffs' inventory. GMAC is a wholly owned subsidiary of GM which finances the distribution of automobiles manufactured by GM. Plaintiffs assert that GM had the ability and means to control GMAC's actions and thus, GMAC should be subject to the Dealer's Act. To hold otherwise, plaintiffs reason, would allow GM to do indirectly through GMAC what it could not do directly under the Act.
 
 
 11
 An "automobile manufacturer" is defined in 15 U.S.C. Sec. 1221(a) as
 
 
 12
 any person, partnership, corporation, association, or other form of business enterprise engaged in the manufacturing or assembling of passenger cars, trucks, or station wagons, including any person, partnership, or corporation which acts for and is under the control of such manufacturer or assembler in connection with the distribution of said automotive vehicles.
 
 
 13
 The issue of whether a finance company is an "automobile manufacturer" within section 1221(a) is unresolved.[3] The district court did not address this question. It determined that GMAC could not be held independently liable under the Act because GMAC was not a party to a franchise agreement as required by section 1221(b). We agree with the district court's ruling as to section 1221(b) and decline to decide the question of whether a finance company can be an automobile manufacturer under section 1221(a).
 
 Section 1221(b) states:
 
 14
 (b) The term "franchise" shall mean the written agreement or contract between any automobile manufacturer engaged in commerce and any automobile dealer which purports to fix the legal rights and liabilities of the parties to such agreement or contract.
 
 
 15
 Courts have held that one not a party to the franchise agreement cannot be liable under the Dealer's Act. Marquis v. Chrysler Corp., 577 F.2d 624, 629 (9th Cir.1978); Stansifer v. Chrysler Motors Corp., 487 F.2d 59, 63-64 (9th Cir.1973); York Chrysler-Plymouth, Inc. v. Chrysler Credit Corp., 447 F.2d 786, 791 (5th Cir.1971). Thus, even if GMAC were an "automobile manufacturer" under the Act, without more, it could not be independently liable because it was not a party to the franchise.
 
 
 16
 A party may be held liable under the Act "notwithstanding it is not a party to the franchise if the party contracting with the dealer is the manufacturer's agent." Marquis v. Chrysler Corp., supra, 577 F.2d at 630; Sherman v. British Leyland Motors, Ltd., 601 F.2d 429, 443 n. 23 (9th Cir.1979). Therefore, the finding by the jury that GMAC acted as GM's agent when it repossessed the inventory is a sufficient basis for GMAC's liability under the Act.
 
 
 17
 GMAC challenges the jury's finding of an agency relationship between GM and GMAC as it pertains to GMAC's liability. GMAC argues there is no evidence that GM ordered GMAC to repossess Olson Motor's inventory. However, such direct evidence is not necessarily required. The evidence, when weighed in the light most favorable to the jury verdict supports a finding of an agency relationship between GM and GMAC. McGowne v. Challenge-Cook Bros., Inc., 672 F.2d 652, 655 (8th Cir.1982).
 
 
 18
 Testimony was introduced at trial to show that GM influenced Ray Olson to finance his business through GMAC. Ray Olson testified that GM officials met with GMAC officials to discuss the capital needs of Olson Motor Company. Further, GMAC's branch manual mandates that GMAC notify GM of its intent to repossess a GM dealer's inventory. Although these facts were disputed by GM we cannot say that the jury verdict was unsupported by the evidence. McKnelly v. Sperry Corp., 642 F.2d 1101, 1105 (8th Cir.1981). Accordingly, we must view GMAC as the agent of GM on the date GMAC repossessed Olson Motor's inventory.
 
 II. Effect of release
 
 19
 Given the agency relationship between GM and GMAC the central issue becomes whether the release of GM signed by Ray Olson acts also to release GMAC. We conclude that under the facts of this case the release is effective as to GMAC.
 
 
 20
 The parties agree "that federal law governs all questions relating to the validity of and defenses to purported releases of federal statutory causes of action." Locafrance U.S. Corp. v. Intermodal Systems Leasing, 558 F.2d 1113, 1115 (2d Cir.1977). Plaintiffs correctly contend that the release of one joint tortfeasor does not automatically release all other tortfeasors. The present case, however, is not one involving joint tortfeasors but rather, involves an agent acting on behalf of a principal. We view this situation as if GM's own employees had conducted the repossession. Therefore, cases cited by plaintiffs regarding joint tortfeasors are generally inapposite.
 
 
 21
 Plaintiffs' reliance on Anderson v. Mobile Discount Corp., 122 Ariz. 411, 595 P.2d 203, 205 (Ariz.App.1979), for example, is misplaced. There a bank employed a finance company to repossess a debtor's mobile home. The finance company wrongfully repossessed the mobile home and the debtor sued both the bank and the finance company for wrongful repossession under the Uniform Commercial Code. The court held that plaintiff's voluntary dismissal of the bank did not dismiss the finance company. The court reasoned that "release of one tortfeasor no longer constitutes release of all tortfeasors, absent an agreement that it shall do so." Id. 595 P.2d at 204-05. The court rejected the argument that the finance company was released as the bank's agent and concluded that the "[l]iability of the agent is direct and not derivative." Id. 595 P.2d at 205.
 
 
 22
 The distinction between Anderson and the present case is clear. In Anderson, the bank and the finance company were independently liable to the debtor under the UCC. The debtor had separate causes of action against each wrongdoer. The finance company's liability was not based on its agency relationship with the bank but was predicated directly on its own violation of the UCC. In the present case, as we discussed in the previous section, GMAC cannot be held independently liable under the Dealer's Act. GMAC's liability is solely derived from its agency relationship with GM.
 
 
 23
 For the foregoing reasons we adopt the principle enunciated by this court in Cox v. City of Freeman, Missouri, 321 F.2d 887, 892-93 (8th Cir.1963) that a valid release of a principal operates also to release the agent. Absent circumstances indicating an opposite intent of plaintiff we hold the release of GM acted also to release GMAC for its repossession of the automobile inventory. Accord Transpac Construction Co. v. Clark & Groff, Eng., Inc., 466 F.2d 823, 829 (9th Cir.1972).
 
 III. Motion for new trial
 
 24
 Plaintiffs argue that the district court erred in denying their motion for new trial. The alleged basis for the new trial motion was that plaintiffs were denied the opportunity to prove that the release was invalid because it was induced by economic duress. This argument is based on the trial court's ruling after the jury verdict that the release was effective as to GMAC. Plaintiffs maintain that the court's post-trial ruling is akin to a change in the law of the case and warrants a new trial.
 
 
 25
 Plaintiffs' contention is without merit as the record reveals that the jury was instructed that:
 
 
 26
 A release is not effective where it is involuntarily given due to economic coercion or duress caused by the defendants so that the person giving the release had no other reasonable alternative than to sign it.
 
 
 27
 Clearly, the duress argument was presented to the jury. Further, plaintiffs' counsel addressed the issue of the effect of economic duress on the validity of the release. Even had the jury been informed that only conduct imputable to GM could avoid the release, no new trial would be appropriate because plaintiffs' position throughout the case was that the conduct of GMAC employees was attributable to GM. Additionally, the only claim of duress advanced by plaintiffs related to the repossession of plaintiffs' inventory, which plaintiffs argued was done at the direction of GM. Thus, we conclude plaintiffs were not deprived of the opportunity to assert their claim of economic duress.
 
 
 28
 The standard of review of a denial of a motion for new trial is well-established in this circuit:
 
 
 29
 A motion for a new trial is addressed to the sound discretion of the trial court and the action of the trial court should not be upset absent a strong showing of an abuse thereof.
 
 
 30
 Sanden v. Mayo Clinic, 495 F.2d 221, 226 (8th Cir.1974). We hold that the district court's denial of plaintiffs' motion for new trial under the circumstances of this case was not an abuse of discretion. Pitts v. Electro-Static Finishing, Inc., 607 F.2d 799, 803 (8th Cir.1979).
 
 IV. Ray Olson's standing
 
 31
 At the close of plaintiffs' case the district court directed a verdict against Ray Olson and ordered dismissal of Ray and Donna Olson on the grounds that they lacked standing to sue under either the Dealer's Act or antitrust laws. On appeal Ray Olson contends that the court erred in holding that he had no standing to sue under the Dealer's Act.[4]
 
 
 32
 The parties agree that the applicable statute provides that an automobile dealer is a person or entity "operating under the terms of a franchise." 15 U.S.C. Sec. 1221(c). Courts have held that where the dealership is doing business in the corporate form and where the corporation is the party to the franchise agreement section 1221(c) dictates that "the locus of the right of action is the corporation." Vincel v. White Motor Corp., 521 F.2d 1113, 1120 (2d Cir.1975).[5]
 
 
 33
 This circuit in Lewis v. Chrysler Motors Corp., 456 F.2d 605, 607 (8th Cir.1972) held that the district court's dismissal of an individual plaintiff under Fed.R.Civ.P. 12(b)(6) was error because:The importance of determining whether a given litigant is one whose relationship with a manufacturer falls within the sweep of that purpose assuredly presents one of the clearest instances where a District Court should act only on the basis of a clear and well-developed record. No such record is present here.
 
 
 34
 Lewis presents no obstacle here as the district court's determination that Ray Olson was not a proper party plaintiff was made after plaintiff's case-in-chief and upon a clear and well-developed record.
 
 
 35
 Ray Olson asserts that the fact that he personally guaranteed the corporation's loans and subsequently suffered losses weighs in favor of finding him a proper party plaintiff. We disagree. The principle was clearly enunciated in Sherman v. British Leyland Motors, Inc., 601 F.2d 429 (9th Cir.1979):
 
 
 36
 No claim or showing has been made that Vincent during material times did not maintain its corporate existence separate and apart from Sherman, notwithstanding that the latter was president and sole stockholder of the corporation. The franchise in question was signed by Sherman for and on behalf of the corporation. No rights or responsibilities were reserved expressly in any of the written documents in favor of, or against, Sherman. It is true that the franchisor recognized the importance of Sherman's services and those of his wife to the corporation, and it is also true that by reason of Sherman's guarantee of certain obligations of the corporation to third parties the corporation became indebted to him. But we have concluded that these circumstances do not warrant departure from the general rule of separation of identities, nor afford Sherman standing to bring suit in his individual capacity as a shareholder or creditor on any of the claims asserted in this action.
 
 
 37
 Id. at 439 (footnotes omitted).
 
 
 38
 For the reasons stated, we hold that the district court's dismissal of Ray Olson as a party plaintiff was proper based on his lack of standing to sue under the Dealer's Act.
 
 Conclusion
 
 39
 The judgment of the district court for GM and GMAC is affirmed.
 
 
 
 *
 The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska, sitting by designation
 
 
 [1]
 Under the Act automobile dealers may sue automobile manufacturers for failure to act in good faith in complying with a franchise agreement. 15 U.S.C. Sec. 1222
 
 
 [2]
 The Honorable Robert G. Renner, United States District Judge for the District of Minnesota
 
 
 [3]
 The only circuit court to have addressed the issue held that Ford Motor Credit, a wholly owned subsidiary of Ford Motor Company, came within the "control" requirement of 15 U.S.C. Sec. 1221(a). Colonial Ford, Inc. v. Ford Motor Co., 592 F.2d 1126, 1129 (10th Cir.), cert. denied, 444 U.S. 837, 100 S.Ct. 73, 62 L.Ed.2d 48 (1979)
 
 
 [4]
 Plaintiffs do not argue on appeal that Ray Olson had standing to sue on the antitrust claims or that Donna Olson had standing to sue under the Dealer's Act or the antitrust laws. Consequently, these issues are not addressed in this opinion
 
 
 [5]
 An exception to this general rule was presented in York Chrysler-Plymouth, Inc. v. Chrysler Credit Corp., 447 F.2d 786, 790-91 (5th Cir.1971). There the court found individual plaintiffs had standing to sue under the Dealer's Act despite the corporate form because the franchise agreement provided that it was made in reliance "on the active, substantial and continuing personal participation" of plaintiffs. York is distinguishable on its facts because in the present case there is no evidence of such a provision in the franchise agreement