James **BONNANO**, Plaintiff,

v.

**CHRYSLER CORPORATION, et al., Defendants.**

No. C–3–82–53.

United States District Court, S.D. Ohio, W.D.

Feb. 5, 1985.

Howard P. Krisher, Arthur J. Kepes, Dayton, Ohio, for plaintiff.

Roger J. Makley, John A. Cumming, Dayton, Ohio, for defendants Chrysler Corporation, Marketing Investment, and intervenor-appellant, Arena Dodge, Inc.

Mark Foster, Jack J. Mayl, Dayton, Ohio, for defendant Chrysler Credit Corporation.

## DECISION AND ENTRY OVERRULING DEFENDANT CHRYSLER CREDIT CORPORATION'S MOTION TO DISMISS PLAINTIFF'S FIRST AND SECOND CLAIMS FOR RELIEF

RICE, District Judge.

Defendant Chrysler Credit Corporation (hereinafter "Chrysler Credit") was named as a party Defendant in all three Counts of Plaintiff's original Complaint, which was filed with this Court on February 18, 1982. (Doc. # 1). Although Plaintiff has since filed two Amended Complaints, the most recent one on August 1, 1983 (Doc. # 29), the allegations involving Chrysler Credit have remained unchanged. Defendant Chrysler Credit filed the instant Motion that it be dismissed as a party Defendant from Counts 1 and 2 on March 31, 1982 (Doc. # 10).

In Plaintiff's First and Second Claims for Relief, Chrysler Corporation, Marketing Investment Division of Chrysler Corporation (hereinafter "MID"), and Chrysler Credit are named as Defendants. (Doc. # 29). Plaintiff alleges that Defendant Chrysler Credit, a wholly-owned subsidiary of Defendant Chrysler Corporation, is engaged in the financing of Chrysler dealerships. (Doc. # 29, ¶ 5). Plaintiff further contends that Defendant Chrysler Credit was a party to his franchise agreement with Defendant Chrysler Corporation, and that Defendant Chrysler Credit refused to lend him money to buy Defendant Chrysler Corporation's preferred stock holding in Arena Dodge, Inc. Plaintiff contends that this refusal, as well as his inability to secure profit distributions from Arena Dodge, Inc. and his subsequent termination as President, General Manager, and Director of the agency, states a claim against Defendant Chrysler Credit under the Automobile Dealers' Day in Court Act (hereinafter "ADDCA"). 15 U.S.C. § 1221, et seq.[1]

In a Motion to Dismiss pursuant to Rule 12(b)(6), this Court must accept as true all well-pleaded allegations in Plaintiff's Second Amended Complaint. Such a motion may only be sustained if it appears beyond doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Neal v. Bergland, 646 F.2d 1178, 1184 (6th Cir.1981).

The language and definitions employed in the ADDCA are central to Defendant Chrysler Credit's Motion to Dismiss. Section 2 of the Act provides:

An automobile dealer may bring suit against any automobile manufacturer engaged in commerce, in any district court of the United States in the district in which said manufacturer resides, or is found, or has an agent, without respect to the amount in controversy, and shall recover the damages by him sustained and the cost of suit by reason of the failure of said automobile manufacturer from and after August 8, 1956 to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer: Provided, That in any such suit the manufacturer shall not be barred from asserting in defense of any such action the failure of the dealer to act in good faith.

15 U.S.C. § 1222. Section 1 of the ADDCA in turn provides the following definitions:

(a) The term "automobile manufacturer" shall mean any person, partnership, cor-

---

1. In his Third Claim for Relief, Plaintiff focuses on Defendant Chrysler Credit's refusal to provide him the financing with which to buy out Defendant Chrysler Corporation's interest in Arena Dodge, Inc. Defendant Chrysler Credit has admitted that it made such a denial of financing. (Doc. # 31, ¶ 3). Plaintiff alleges that Defendants Chrysler Credit and Chrysler Corporation conspired to prevent his acquisition of said stock in violation of the Sherman Antitrust Act, 15 U.S.C. § 1 et seq. Defendant Chrysler Credit has raised no objection to its inclusion as a party Defendant in said Third Claim for Relief.

poration, association, or other form of business enterprise engaged in the manufacturing or assembling of passenger cars, trucks, or station wagons, including any person, partnership, or corporation which acts for and is under the control of such manufacturer or assembler in connection with the distribution of said automotive vehicles.

(b) The term "franchise" shall mean the written agreement or contract between any automobile manufacturer engaged in commerce and any automobile dealer which purports to fix the legal rights and liabilities of the parties to such agreement or contract.

15 U.S.C. § 1221(a), (b).

Section 2 of the ADDCA requires that an "automobile manufacturer" be party to a "franchise" before it can properly be charged by an automobile dealer with a breach of good faith under the ADDCA. Pertinent case law, some of which is more recent than the dates of the parties' memoranda, indicates a variety of interpretations as to when these requirements of Section 2 are satisfied. Defendant's contention in the instant Motion is that it is not subject to the ADDCA's substantive provisions since it is not an "automobile manufacturer" under 15 U.S.C. § 1221(a).

Even Defendant concedes that the Tenth Circuit's decision in *Colonial Ford, Inc. v. Ford Motor Co.*, 592 F.2d 1126, 1129 (10th Cir.1979), *cert. den.*, 444 U.S. 837, 100 S.Ct. 73, 62 L.Ed.2d 48 (1979), supports Plaintiff's allegation that Defendant is an "automobile manufacturer" subject to the ADDCA. (Doc. # 15). In *Colonial Ford,* Ford Motor Credit Company ("Ford Credit") was not a party to Ford Motor Company's franchise agreement with Plaintiff, but it had financed Plaintiff's purchases of automobiles from Defendant Ford Motor Company. In its first consideration of the case, the Tenth Circuit held that the question of whether the wholly-owned finance company had "acted for" or was "under the control" of Ford Motor Company, thus rendering it an "automobile manufacturer" under 15 U.S.C. § 1221(a), had properly been submitted to the jury by the trial court. 577 F.2d 106, 108 (10th Cir.1978).

On petition for rehearing in *Colonial Ford,* the Tenth Circuit reconsidered its position. It ruled instead that, in light of the ADDCA's broad remedial purpose, a wholly-owned subsidiary such as Ford Credit, whose involvement with a dealer was exclusively for the purpose of facilitating distribution of automobiles manufactured by its parent, was as a matter of law under the "control" of the parent automobile company and thus conclusively an "automobile manufacturer" for purposes of liability under the ADDCA. The court observed:

> The most obvious point of leverage in the manufacturer-dealer relationship is financing. When, as in this case, a manufacturer uses a wholly owned subsidiary to facilitate that financing, it brings the subsidiary within the remedial purposes of the Act whether or not it is shown that the manufacturer ordered the specific conduct complained of. It would be unrealistic to suppose that a wholly owned subsidiary working to facilitate the parent's distributive activities would act other than to promote the desires of its parent. Thus the Act's "control" requirement is satisfied by showing corporate ownership and confluence of interest.

592 F.2d at 1129. The professed mutual goal of Plaintiff herein and Chrysler Corporation was that Plaintiff eventually become the sole owner of Arena Dodge, Inc. Plaintiff's allegation that Defendant Chrysler Credit denied him adequate financial assistance in continuing with the dealership and meeting that goal would appear to state a claim under the ADDCA against Chrysler Credit under the Tenth Circuit's logic in *Colonial Ford* that a wholly-owned subsidiary works only to facilitate the parent company's true distribution objectives.

While this Court is appreciative of the Tenth Circuit's desire to promote the ADDCA's broad remedial objectives, it also recognizes the hesitance of other federal courts in the wake of *Colonial Ford* to

presume as a matter of law that a wholly-owned subsidiary such as Ford Credit or Defendant Chrysler Credit "acts for or is under the control of" its parent. *See Olson Motor Co. v. General Motors Corp.*, 703 F.2d 284, 287 n. 3 (8th Cir.1983), *cert. den.*, —— U.S. ——, 104 S.Ct. 240, 78 L.Ed.2d 231 (1983); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 550 F.Supp. 1199 (N.D.Ill.1982). The latter courts have instead interpreted Section 1221(a)'s broad definition of "automobile manufacturer" through application of general principles of agency or corporate law.

In *Olson Motor Co. v. General Motors Corp.*, Plaintiffs contended that the failure of their automobile company was directly attributable to the conduct of General Motors Corporation in dictating Plaintiffs' capital structure and financing needs. Plaintiffs further contended that General Motors Acceptance Corporation ("GMAC"), which was not a party to the franchise agreement, had also violated the ADDCA through its active participation in Defendant General Motors Corporation's financing scheme and its subsequent impoundment of Plaintiffs' automobile inventory. 703 F.2d at 286. Like Chrysler Credit, GMAC is a wholly-owned subsidiary of General Motors Corporation which finances the distribution of the automobiles manufactured by its parent.

Rather than addressing the issue of whether a finance company like GMAC was an "automobile manufacturer" under 15 U.S.C. § 1221(a), the district court in *Olson*

ruled that GMAC could not be held independently liable under the ADDCA since it was not a party to a franchise agreement as required by 15 U.S.C. § 1221(b).[2] The Eighth Circuit, after noting but avoiding judgment as to the merits of the Tenth Circuit's ruling in *Colonial Ford*, affirmed the district court's ruling as to GMAC's independent liability as an "automobile manufacturer." It went on to note, however, that a party may be liable under the ADDCA, even if it is not an "automobile manufacturer" or a party to the franchise agreement, if the party contracting with the dealer is the manufacturer's agent. 703 F.2d at 287. The *Olson* court then affirmed the finding of the jury below that GMAC had acted as the agent of General Motors Corporation when it repossessed Plaintiffs' inventory. The agency relationship found by the jury was thus deemed by the Eighth Circuit to have been a sufficient basis for GMAC's liability under the ADDCA, notwithstanding the absence of grounds for GMAC's independent liability under the statute.[3] 703 F.2d at 287–88.

Unlike *Olson*, the issue presented by Plaintiff herein is whether Defendant Chrysler Credit's *refusal* to deal with Plaintiff was due to the control exerted over it by its parent, Defendant Chrysler Corporation. The logic of the *Olson* opinion nonetheless appears applicable. The essence of the Eighth Circuit's position was that, if a wholly-owned finance company was indeed subject to the control of its

---

**2.** The Court notes that Plaintiff contends in his Second Amended Complaint that Defendant Chrysler Credit is a party to its franchise agreement. (Doc. # 29, ¶ 10). Sworn documents and affidavits which have been submitted to this Court render that allegation somewhat doubtful.

**3.** In *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 550 F.Supp. at 1199, the district court engaged in an analysis quite similar to that of the *Olson* court in overruling a Motion to Dismiss filed by Defendant Ford Motor Credit Company. Noting the broad remedial purpose of the ADDCA, the court noted that the statute's goal could be thwarted by manufacturers transacting business "through alter-egos, agents or wholly owned subsidiaries." 550 F.Supp. at 1202. The *DeValk* court further observed:

The definition [of "manufacturer"] is a broad one, and cases interpreting it have properly recognized that there exist situations in which one not a manufacturer in the traditional sense may nonetheless fall within its scope. For example, if a non-manufacturer is but an "instrumentality" of the manufacturer, in the sense that "instrumentality" is used in corporation law, that entity may properly be sued under the Act. *Volkswagen Interamericana, S.A., v. Rohlsen*, 360 F.2d 437, 441–442 (1st Cir.1966). Similarly, applying general agency principles, if a nonmanufacturer is subject to the manufacturer's control or right to control, a suit against the nonmanufacturer may proceed. *Id.*

550 F.Supp. at 1201 (footnote omitted).

parent automobile manufacturer, the subsidiary's insulation from liability under the ADDCA would permit the parent to do indirectly what it could not do directly. Such an approach promotes the broad remedial purpose of the ADDCA, yet retains for the trier of fact the question as to whether the finance company "act[ed] for or is under the control of" the manufacturer "in connection with the distribution of said automotive vehicles."

Based on the aforesaid, this Court cannot say that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Accordingly, Defendant Chrysler Credit Corporation's Motion to Dismiss Plaintiff's First and Second Claims for Relief is overruled.