**KEYS JEEP EAGLE, INC., Florida Keys Jeep Eagle, Inc., Ann Haglund and Darrell Feaker, Plaintiffs,**

v.

**CHRYSLER CORPORATION and Chrysler Credit Corporation, Defendants.**

**No. 92–10080–CIV.**

United States District Court, S.D. Florida.

July 5, 1995.

1440

William J. Wheeler, Philadelphia, PA, Florida Keys Jeep Eagle, Incorporated, Ann Haglund, Darrell Feaker, for Keys Jeep Eagle, Incorporated.

Eric David Isicoff, Mershon, Sawyer, Johnston, Dunwody & Cole, P.A., Miami, FL, Robert D. Cultice, Goldstein & Manello, P.C., Boston, MA, Eric David Isicoff, Isicoff & Ragatz, P.A., Miami, FL, for Chrysler Corporation.

Eric Christu, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., West Palm Beach, FL, Rebecca Foye Duke, Winthrop, Stimson, Putman & Roberts, Palm Beach, FL, for Chrysler Credit Corporation.

### ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before this Court upon Defendant Chrysler Corporation and Defendant Chrysler Credit Corporation's Motions for Summary Judgment, both filed on April 4, 1995. Plaintiff filed responses on April 19, 1995. The Court conducted a hearing and heard oral argument on the motions for summary judgment on April 21, 1995.

### I. Factual Background

The instant suit arises out of a debtor-creditor relationship established to facilitate the sale of vehicles by the Plaintiff automobile dealership ("Florida Keys Jeep"). In May 1990, the parties executed a franchise dealership contract with Defendant Chrysler Corp., the franchisor.

The dealer agreement with Defendant Chrysler Corp. provided Florida Keys Jeep with the non-exclusive right to purchase vehicles, parts, accessories and other Chrysler products for resale in a designated sales locality in the Florida Keys.

Florida Keys Jeep also executed financial agreements with Defendant Chrysler Credit Corporation ("CCC") to facilitate Florida Keys Jeep's purchase of vehicles from Defendant Chrysler Corp.[1] This financing arrangement is known as a floorplan line of credit. It provides, inter alia, that CCC will extend wholesale financing to Florida Keys Jeep by making loans or advances to Florida Keys Jeep to finance its acquisition of vehicles. The Floorplan Agreement specified that CCC had the option of making any advance and making such an advance was not obligatory and that CCC, at its election, could terminate at any time Florida Keys Jeep's right to request CCC to make an advance.

To secure the payment of Advances under the Floorplan Agreement, Florida Keys Jeep granted to CCC a security interest in and to each vehicle financed by CCC. The Agreement also specified that upon the sale of each vehicle with respect to which CCC had made an advance, Florida Keys Jeep would remit promptly to CCC the total amount then outstanding of CCC's Advance on such vehicle

---

1. Defendant Chrysler Corp. is not a party to any of the Financing Agreements between CCC and Plaintiffs.

and that Florida Keys Jeep would hold in trust for CCC all proceeds of each vehicle when received by Florida Keys Jeep.

Florida Keys Jeep executed and delivered to CCC a demand promissory note in the principal amount of $840,000 as evidence of Florida Keys Jeep' liability to CCC on account of all Advances. To further secure the payment of all amounts due to CCC, Florida Keys Jeep executed and delivered to CCC an Assignment of Factory Credits wherein it assigned to CCC all credits due and to become due from Chrysler to it and directed Chrysler to make payment directly to CCC of any such credits. The Assignment expressly provides that Florida Keys Jeep grant CCC the right to receive and collect any and all monies due or to become due from Chrysler to Florida Keys Jeep and that Florida Keys Jeep irrevocably appoints CCC as its attorney-in-fact for the purpose of carrying out the terms of the Assignment. CCC sent the Assignment to Chrysler and directed Chrysler to make all payments thereunder directly to Florida Keys Jeep until further notice. A May 18, 1990 Dealer Payment Authorization authorized Chrysler to accept payment from CCC for all vehicles ordered by and sold to Florida Keys Jeep.

In the summer of 1990, Florida Keys Jeep began purchasing vehicles from Chrysler and selling or leasing them retail. Florida Keys Jeep financed the acquisition of vehicles from Chrysler by using Advances made by CCC. In December 1990, Florida Keys Jeep sold vehicles financed by CCC without paying off CCC's lien on the vehicles. Such a sale is a "sale out-of-trust." The parties' Floorplan Agreement provides that CCC's lien on each vehicle that it finances must be paid off at the time such vehicle is sold and that, if Florida Keys Jeep fails to makes such payments when due, Florida Keys Jeep is in default.

On or about December 18, 1990, CCC notified Chrysler that it would no longer pay for vehicles ordered by Florida Keys Jeep without CCC's prior approval as to each vehicle. This action is referred to as "finance hold." From and after CCC placed Florida Keys Jeep on finance hold, Florida Keys Jeep continued to purchase vehicles from Chrysler with CCC financing, but CCC approved each purchase in advance. During this time, Chrysler assisted Florida Keys Jeep in obtaining vehicles.

In a January 31, 1992 letter, CCC advised Florida Keys Jeep that, based on a review of Florida Keys Jeep's books and records, a minimum investment of $136,000 in Florida Keys Jeep by March 2, 1992 was necessary if CCC was to continue as Florida Keys Jeep's financing source. Florida Keys Jeep agreed that additional working capital was needed, but disagreed as to the amount.

Plaintiff Ann Haglund, who was the franchise owner at this time, wrote to CCC on February 12, 1992 and accused four CCC employees of improper conduct. Haglund did not accuse Chrysler Corp. CCC notified Florida Keys jeep in a March 3, 1992 letter that based on Florida Keys' failure to respond to CCC's January 31, 1992 letter requesting additional investment and on Haglund's confirmation that she would not make any additional investment, CCC intended to cancel Florida Keys Jeep's wholesale credit lines as of March 4, 1992.

Florida Keys Jeep notified Chrysler and CCC in a March 5, 1992 letter that as of April 1, 1992, Florida Keys jeep would cease doing business. Florida Keys Jeep advised Defendants that CCC's "numerous breaches" forced Florida Keys Jeep to close its dealership. Florida Keys Jeep made no accusations against Chrysler Corp.

Plaintiffs have filed suit alleging fraud, breach of fiduciary responsibility, violation of 15 U.S.C. §§ 1221–1225 and breach of contract. The allegations against CCC refer to a series of alleged bad acts by CCC in its handling of the floorplan credit line. The Amended Complaint further alleges that CCC's actions were undertaken at the direction of Chrysler Corporation to further Chrysler Corporation's goal of reducing the number of Jeep dealers in the United States. Plaintiffs seek $20,000,000.00 in actual damages, an unspecified amount in punitive damages, as well as attorneys' fees and costs.

## II. Legal Standard

■ Summary judgment is appropriate only where it is shown that no genuine dis-

pute as to any material fact exists and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In ruling on the moving party's motion, the court must view the evidence in the light most favorable to the non-moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In so doing, the court "should 'resolve all reasonable doubts about the facts in favor of the non-movant' and draw 'all justifiable inferences … in his favor.'" *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1437 (11th Cir.1991) (alteration in original) (citation omitted).

■ Initially, the moving party bears the burden of pointing to that part of the record which shows the absence of a genuine issue of material fact. If the movant meets its burden, the burden then shifts to the non-moving party to establish that a genuine dispute of material fact exists. *Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913 (11th Cir.1993), *reh'g denied,* 16 F.3d 1233 (11th Cir.1994). To meet this burden, the non-moving party must go beyond the pleadings and "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Chanel, Inc. v. Italian Activewear, Inc.,* 931 F.2d 1472, 1477 (11th Cir.1991). If the evidence relied on is such that a reasonable jury could return a verdict in favor of the non-moving party, then the Court should refuse to grant summary judgment. *Hairston,* 9 F.3d at 913. However, a mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

### III.   Analysis

Defendants move for summary judgment on Plaintiffs' four claims[2] for 1) fraud; 2) breach of fiduciary duty; 3) violation of 15 U.S.C. §§ 1221–1225; and 4) breach of contract.

### A.   Chrysler Corporation

Plaintiffs seek to hold Defendant Chrysler Corporation liable for CCC's alleged wrongdoings on grounds that "Chrysler has made a policy decision to reduce the number of Jeep Eagle franchised dealers in the United States by encouraging its subsidiary, CCC, to force closure of said businesses." Am. Compl. ¶¶ 65–66. Plaintiffs seem to base their claims against Chrysler Corp. on the *alter ego* theory and agency principles.

#### 1.   Alter Ego Theory

■ Under Florida law, to pierce the corporate veil, a plaintiff must show that 1) one corporation is a "mere instrumentality" of the other;[3] and that 2) a corporation is "a device or sham to mislead creditors or exists for a fraudulent purposes." *Dania Jai–Alai Palace v. Sykes,* 450 So.2d 1114, 1117–20 (Fla.1984).

■ Plaintiffs have not offered any evidence in support of their *alter ego* theory. Plaintiffs do not cite to any record evidence and rely only on statements by two CCC employees[4] to support their contention that Chrysler Corp. directed CCC to commit the wrongful acts alleged in the Amended Complaint. Assuming arguendo that the statements are true and admissible, Plaintiffs fail to show how these statements establish that CCC was Chrysler Corp.'s "mere instrumentality" or how CCC was a device or sham designed to mislead creditors or existed for fraudulent purposes.

#### 2.   Agency Theory

■ Under Florida law, a plaintiff must prove the following elements to establish agency: 1) acknowledgement by the principal that the agent will act for it; 2) acceptance of

---

**2.** The 86–paragraph Amended Complaint has two counts but contains four claims.

**3.** *Aztec Motel v. State ex. rel. Faircloth,* 251 So.2d 849, 852 (Fla.1971).

**4.** The statements are: "Chrysler Corporation was pushing to consolidate Jeep Eagle stores with strong Chrysler Plymouth stores'" and "the push was on from Chrysler Corporation to consolidate Jeep Eagle dealerships with Chrysler Plymouth dealerships." Pl.Mem. at 1.

the undertaking by the agent; and 3) control by the principal over the agent's actions. *Goldschmidt v. Holman,* 571 So.2d 422, 424 n. 5 (Fla.1990). Plaintiffs rely on the consolidation policy discussed *supra* to oppose Defendant's motion. For the reasons stated above, the Court finds that Plaintiffs have failed to present any facts upon which a reasonable jury could find that an agency relationship existed between Chrysler Corp. and CCC.

The Amended Complaint does not seek to hold Chrysler Corp. directly liable, but Plaintiffs have not presented any evidence to establish a basis for vicarious liability. The Court thus finds that summary judgment in Defendant Chrysler Corporation's favor on all four counts is appropriate.

### B. Chrysler Credit Corporation

Plaintiffs seek to hold CCC liable for 1) fraud; 2) breach of fiduciary duty; 3) breach of contract; and 4) violation of 15 U.S.C. §§ 1221–1225.

#### 1. Fraud

■ It is well settled under Florida law that parties to a contract can only seek tort damages if conduct occurs that establishes a tort "distinguishable from or independent of [the] contract." *AFM v. Southern Bell Tel. & Tel. Co.,* 515 So.2d 180, 181 (Fla.1987) (citation omitted); *see Interstate Sec. Corp. v. Hayes Corp.,* 920 F.2d 769, 773 (11th Cir. 1991), *reh'g denied,* 929 F.2d 704 (1991). Under the economic loss doctrine Plaintiffs cannot raise tort claims to recover solely economic damages flowing from breach of the dealership contract without evidence of personal injury or property damage.

■ Plaintiffs admit the existence of a contractual relationship with CCC. *Am. Compl.* ¶ 11. Paragraphs 32, 53, 65 and 67 of the Amended Complaint contain the allegations of fraud. However, each allegation relates to, arises out of, or directly depends upon Plaintiffs' contractual relationship with CCC. Paragraph 32 alleges that a CCC employee promised to reinstate the floorplan; Paragraph 53 alleges that another CCC employee stated to Plaintiffs that CCC would

not reinstate the floorplan; Paragraph 65 alleges that CCC fraudulently concealed its intentions not to reinstate the floorplan; and Paragraph 67 alleges that CCC's misrepresentations about the floorplan forced Plaintiffs to close their dealership. The Amended Complaint does not contain allegations of personal injury or property damage outside the contract.

All of the fraud allegations are wholly dependent on the contractual relationship. Under the economic loss doctrine as stated in *AFM,* the Court thus finds that Plaintiffs' fraud claim is barred and that Defendant CCC therefore is entitled to summary judgment.

#### 2. Breach of Fiduciary Duty

■ Plaintiffs' breach of fiduciary duty claim is based upon the duty imposed when the parties entered into the financing agreement. However, under Florida law the general rule is that in a lender-debtor relationship the lender owes no fiduciary duties. *Capital Bank v. MVB, Inc.,* 644 So.2d 515, 518 (Fla.Dist.Ct.App.1994). Moreover, if a fraud claim is barred under the economic loss doctrine of *AFM,* a claim for breach of fiduciary duty also fails. *Interstate Securities,* 920 F.2d at 777. Accordingly, the Court finds that under *Capital Bank* and *Interstate Securities,* Plaintiffs' claim for breach of fiduciary duty fails and Defendant CCC is entitled to summary judgment.

#### 3. Breach of Contract

■ Plaintiffs contend that CCC's delay in payment of dealer credits and the "involuntary reduction of the floorplan amount approved" [sic] constitute breach of contract. Pl.Mem. at 7. Specifically, Plaintiffs argue that CCC's imposition of finance hold, prior approval, hold on factory receivables and on dealer reserve payments "clearly constitute breach of contract." *Id.* at 9.

However, Plaintiffs do not identify a single contract term or provision that CCC allegedly breached. In deposition testimony, Plaintiffs Ann Haglund and Darrell Feaker could not identify a single breached term, provision or obligation of the financing agreements

with CCC. *See* Haglund Depo.; Feaker Depo.

Paragraph 31 of the Amended Complaint refers to CCC's alleged refusal to permit Florida Keys Jeep to utilize the full floorplan line of credit. Paragraph 46 alleges that CCC kept Plaintiffs on finance hold and withheld funds due the dealership. It is axiomatic that the non-moving party must go beyond the pleadings and "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Chanel, Inc. v. Italian Activewear, Inc.*, 931 F.2d 1472, 1477 (11th Cir.1991). Even assuming the truth of the allegations, Plaintiffs have failed to present any evidence as to how CCC's actions constitute breach of contract.

More importantly, Plaintiffs' claim fails as a matter of law because the Security Agreement specifically authorized[5] all of CCC's actions—the finance hold, prior approval, hold on factory receivables and dealer reserve payments. *See* Security Agreement ¶¶ 2.0 and 6.0. In light of the foregoing, the Court finds that Defendant CCC is entitled to summary judgment on the breach of contract claim.

#### *4. 15 U.S.C. §§ 1221–1225*

■ Title 15 U.S.C. §§ 1221–1225 is the Automobile Dealer's Day in Court Act ("ADDCA"). The Act provides a cause of action against the manufacturer where the manufacturer violates its duty of good faith, which the Act defines as the duty of a franchise not to subject a dealer to coercion or intimidation. 15 U.S.C. § 1221(e). In order for CCC to be liable under the Act, Florida Keys Jeep must prove that CCC is an agent of the manufacturer (Chrysler Corp.) because CCC is not a party to the franchise agreement. *York Chrysler–Plymouth, Inc. v. Chrysler Credit Corp.*, 447 F.2d 786, 791 (5th Cir.1971); *Olson Motor Co. v. General Motors, Corp.*, 703 F.2d 284, 287 (8th Cir.), *cert. denied*, 464 U.S. 894, 104 S.Ct. 240, 78 L.Ed.2d 231 (1983).

■ Although the Amended Complaint does not plead either actual or apparent agency, Plaintiffs concede that they must prove agency. Under Florida law, a plaintiff must prove the following elements to establish actual agency: 1) acknowledgement by the principal that the agent will act for it; 2) acceptance of the undertaking by the agent; and 3) control by the principal over the agent's actions. *Goldschmidt v. Holman*, 571 So.2d 422, 424 n. 5 (Fla.1990). To establish apparent agency, a plaintiff must establish the following elements: 1) a representation by the principal; 2) reliance on that representation by a third person; and 3) a change of position by the third person in reliance upon such representation to his detriment. *Holiday Inns, Inc. v. Shelburne*, 576 So.2d 322, 333 (Fla.Dist.Ct.App.1991); *Orlando Executive Park, Inc. v. Robbins*, 433 So.2d 491, 494 (Fla.1983).

■ Plaintiffs present the following facts to support their assertion of agency:

1) CCC acted on behalf of Chrysler Corp. when an employee signed a document in which Florida Keys Jeep gave up a security interest in its assets;

2) CCC's employees encouraged a competing dealer to pursue acquisition of Florida Keys Jeep's business;

3) a CCC employee performed Chrysler Corp.'s function when he accepted a dealer application;

4) CCC accepted a dealer application;

5) Chrysler Corp. and CCC shared office space; and

6) CCC took aggressive action to force Florida Keys Jeep out of business.

The Court finds that Plaintiffs have not stated any facts in support of actual or apparent agency. The factual assertions listed above largely concern CCC's actions, not Chrysler Corp.'s actions.

With regard to actual agency, Plaintiffs have presented no evidence to show acknowledgement by the principal (Chrysler Corp.)

---

5. Plaintiffs concede that the dealership was "out of trust." Haglund Depo. at 82, 402; Feaker Depo. at 112. This condition constitutes a material default of the Security Agreement. *See* Boggs Depo., Def.Motion Exh. A. In the event of default, Paragraph 6 of the Security Agreement authorizes CCC to terminate the Agreement, refuse to advance funds, and/or accelerate the outstanding balance. CCC ultimately terminated the floorplan financing agreement.

that the agent (CCC) will act for it, nor is there evidence that CCC accepted the undertaking or that Chrysler Corp. exercised control over CCC. Likewise, Plaintiffs fail to establish the requisite elements of apparent agency. Plaintiffs have not presented any evidence of Chrysler Corp.'s actions which could constitute a representation by Chrysler that CCC was Chrysler's agent. Plaintiffs also do not show that they relied on and changed their position because of Chrysler's representation of agency.

As there are no triable issues of material fact as to agency, the Court finds that summary judgment on the ADDCA claim in CCC's favor is appropriate. CCC is also entitled to summary judgment as to individual Plaintiffs Ann Haglund and Darrell Feaker's ADDCA claims because only dealerships in their corporate form have standing to sue under ADDCA. *Olson Motor Co. v. General Motors Corp.,* 703 F.2d 284, 289 (8th Cir.), *cert. denied,* 464 U.S. 894, 104 S.Ct. 240, 78 L.Ed.2d 231 (1983). The exception for individual plaintiffs requires that the franchise agreement be made in reliance "on the active, substantial and continuing personal participation" of the plaintiffs. *York Chrysler–Plymouth, Inc. v. Chrysler Credit Corp.,* 447 F.2d 786, 790–91 (5th Cir.1971). There is no evidence of such a provision in the instant case.

### IV. Conclusion

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendant Chrysler Corporation's Motion for Summary Judgment be, and the same is hereby, GRANTED. It is

FURTHER ORDERED and ADJUDGED that Defendant Chrysler Credit Corporation's Motion for Summary Judgment be, and the same is hereby, GRANTED.

DONE and ORDERED.