**STATE ex rel. Rose E. ELSON, Relator,**

v.

**Hon. Jack KOEHR, Circuit Court, City of St. Louis, Respondent.**

No. 75058.

Supreme Court of Missouri, En Banc.

June 29, 1993.

---

**3.** *Bondu v. Gurvich*, 473 So.2d 1307, 1313 (Fla. App.1984).

**4.** *Wear v. Walker*, 800 S.W.2d 99 (Mo.App.1990).

Jonathan E. Fortman, Stephen F. Meyerkord, St. Louis, for relator.

Thomas L. Fiala, Eugene K. Buckley, St. Louis, for respondent.

## ORIGINAL PROCEEDING IN MANDAMUS

LIMBAUGH, Judge.

Relator, Rose E. Elson, seeks a writ of mandamus directing respondent, Judge Jack Koehr of the Circuit Court of the City of St. Louis, to reinstate Elson's petition for damages, dismissed for lack of proper venue and transferred to the Circuit Court of St. Louis County. The Court of Appeals, Eastern District, issued a preliminary writ, and after hearing, the writ was made permanent. This Court then granted transfer.

In the underlying case, Elson sued Southwest Airline Co. (Southwest) for negligence, claiming that she was injured from a fall at the Southwest Airlines ticket counter at Lambert–St. Louis International Airport during a layover on a flight from Houston to Indianapolis. Although the plaintiff, Elson, is a resident of the state of Texas and Southwest is a Texas corporation, and although the incident that gave rise to the lawsuit occurred in St. Louis County where the airport is located, the case was filed in the City of St. Louis. Southwest's only connection with the City of St. Louis is that passenger reservations and ticket sales for Southwest flights are made through independent travel agents situated in the City.[1]

At issue is whether these independent travel agents are "agents" for the transaction of Southwest's "usual and customary business" under the corporate venue statute, § 508.040, RSMo 1986. Because we rule this issue in favor of relator-plaintiff Elson, the writ of mandamus is made permanent.

■ Venue refers to the situs in which a court of competent jurisdiction may adjudicate an action. *State ex rel. Rothermich v. Gallagher*, 816 S.W.2d 194, 196 (Mo. banc 1991). In Missouri, proper venue for an action is determined by statute. *Id.* The primary purpose of Missouri's venue statutes is to provide a convenient, logical, and orderly forum for the resolution of disputes. *Id.*

■ Under § 476.410, RSMo Supp. 1992, if venue is improper where a petition is filed, a circuit judge must transfer the case, upon a motion to dismiss for improper venue, to a circuit court in which venue is proper. However, if venue were proper where the case was originally filed, a writ of mandamus is the appropriate remedy by which to seek reinstatement of the case. *Rothermich*, 816 S.W.2d at 197.

*Section 508.040* determines venue where a corporation, such as Southwest, is the sole defendant to a suit. *Rothermich*, 816 S.W.2d at 197. That section provides, in pertinent part:

Suits against corporations shall be commenced either in the county where the cause of action accrued ... or in any county where the corporations shall have or usually keep an office or agent for the

---

**1.** Elson obtained her reservations and tickets through some other source.

transaction of their usual and customary business.

Under this statute, and in view of the facts that the cause of action accrued in St. Louis County and that Southwest maintains no "office" in the City of St. Louis, we must determine: first, whether independent travel agents in the City of St. Louis are "agents" for Southwest; and second, whether the placement of airline reservations and the sale of airline tickets constitute the transaction of Southwest's "usual and customary business."

The facts pertaining to the relationship between Southwest and the St. Louis City travel agents are undisputed. To each travel agency, Southwest issues a "Certificate of Appointment" that states:

> [Travel agency] is hereby appointed to represent Southwest Airline Co. in the promotion and sale of passenger air travel in accordance with and subject to the terms and conditions of the Airline Reporting Corporation Agency Sales Agreement ... [2]

The "Certificate of Appointment"—in effect the contract between the parties—includes several other conditions imposed by Southwest, as well as a provision that the agreement may be canceled at any time by either party upon written notice to the other. Southwest supplements the conditions of the contract by sending each travel agency a letter that reiterates the ticketing restrictions stated in the Certificate and addresses the issues of meals, special fares, local marketing offices, and Dallas Love Field restrictions. The letter also refers to a special 10% commission payable to the agencies if their customers use an "Emergency Ticketing Service" offered by the airline and a similar commission payable if the agents call directly to Southwest to make reservations for their clients.

■ In the context of the venue statutes, Missouri courts have defined "agent" as "a

person authorized by another to act for him, one intrusted with another's business." *State ex rel. Pagliara v. Stussie,* 549 S.W.2d 900, 903 (Mo.App.1977), quoting *Black's Law Dictionary* 85 (4th ed. 1968); *State ex rel. Cameron Mutual Ins. Co. v. Reeves,* 727 S.W.2d 916, 918 (Mo.App.1987). Consistent with this definition, but more comprehensive, is the definition from *§ 1* of the *Restatement (Second) of Agency.* That section states: "[Agency is] the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Under the *Restatement,* essential characteristics of the agency relation are:

1) that an agent holds a power to alter legal relations between the principal and a third party; *Restatement (Second) of Agency § 12;*

2) that an agent is a fiduciary with respect to matters within the scope of the agency; *Restatement (Second) of Agency § 13;*

3) that a principal has the right to control the conduct of the agent with respect to matters entrusted to the agent; *Restatement (Second) of Agency § 14.*

Consistent with these agency principles, the Court of Appeals, Southern District, in the *Cameron* case, held that an independent insurance agency, having as part of its authority the power to bind the insurer to insurance contracts, was an agent of the insurer under *§ 508.040. Cameron,* 727 S.W.2d at 918. *See also State ex rel. Wilson v. Sanders,* 745 S.W.2d 735 (Mo.App. 1987).

■ Respondent, attempting to distinguish the *Cameron* case from the case at hand, suggests that the relationship between an insurer and an insurance agency is substantially different from the relation-

---

**2.** The Airline Reporting Corporation (ARC) is a nationwide clearinghouse established by the airline industry to give independent travel agents the ability to issue airline tickets. *In re Karsh Travel, Inc. v. Airlines Reporting Corp.,* 87 B.R. 110 (Bankr.N.D.Cal.1988). Travel agencies remit proceeds from the sale of Southwest tickets and the tickets of other airlines to the ARC which in turn pays Southwest and the other airline companies for the tickets sold. ARC is also the clearinghouse for the compensation paid by the airlines to the independent travel agencies.

ship between an airline and a travel agency. Respondent states that an insurance agency is more fully involved with the business of the principal, that in addition to binding the insurer to insurance policies and soliciting and submitting applications for coverage, the agent (at least in the *Cameron* case) has authority to countersign policies, set liability limitations and deductibles, and accept payments and send notices for premiums due. Because of these additional duties the independent insurance agent must maintain an ongoing relationship with the insurer's policyholders. In contrast, respondent asserts that the travel agent has contact with the client just for the limited purpose of selling an airline ticket. After the sale is consummated, the travel agent's involvement ends, and any further contact with the client is made exclusively by the airline. As we understand respondent's position, no agency relationship should be recognized for purposes of the venue statute where, as he states, "the sole purpose of the relationship between the ticket agent and Southwest Airlines is to sell flight tickets."

The weakness of respondent's argument is that it in no way refutes the existence of an agency relationship between the airline and the travel agent as that relationship is defined under traditional agency principles. Instead, the argument shows merely that the scope of the agency between an airline and a travel agent may be less than that between an insurance company and an independent insurance agency. In other words, the distinction raised by respondent refers only to the *scope* of the agency rather than the *existence* of the agency.

■ In this case, Southwest and the independent travel agencies agreed in writing to establish an agency relationship in which the agents are given the express authority to sell and promote air travel on the airline. The existence of the agency is confirmed by matching the three essential agency characteristics to the provisions of the agency agreement. It is uncontested that Southwest is bound to provide air travel to customers who buy airline tickets from the travel agencies. Nor is there any

dispute that the travel agencies operate as fiduciaries of Southwest within the scope of the agency agreement. That fiduciary relationship is evidenced, in part, by the fact that the travel agency makes reservations and sells tickets on behalf of the airline, and the moneys collected from those sales are forwarded to the airline through the ARC, all to the airline's direct benefit. Finally, it is obvious that Southwest exercises control over the efforts of the travel agencies to sell and promote air travel. As outlined above, the agreement between Southwest and the travel agencies is replete with conditions and restrictions on the authority of the agencies to act on behalf of the airline. Under these circumstances, we hold that St. Louis travel agencies operating under the "Certificate of Appointment" issued by Southwest are agents of Southwest under *§ 508.040.*

■ We must next determine whether the reservation and sale of airline tickets constitute the "usual and customary business" of Southwest. Initially, we believe that an agent under *§ 508.040* need not participate in or have authority to act in *all* facets of a corporation's "usual and customary business." Had the legislature intended otherwise, it would have authorized venue only where a corporation maintains a *general agent.* It is sufficient, therefore, if the facet of the business in which the agent does have authority to act is a significant part of the "usual and customary business."

■ Neither party has directed us to any case that describes or defines the "usual and customary business" of an airline, nor has our research uncovered one. The issue was addressed, however, in *Cameron,* 727 S.W.2d at 918, in the context of an independent insurance agency, where the Court stated: "Obviously, it is the selling of insurance which keeps relator [Cameron Mutual Insurance Company] operating. Relator's usual and customary business would at least include, if it is not its principal business, the selling of insurance contracts." More analogous is *State ex rel. Heins v. Calhoun,* 281 Mo. 583, 220 S.W. 6 (1920), in which this Court stated that the

" 'usual and customary business' of a railroad company consists in the receipt of freight and passengers ... to issue bills of lading, the *sale of tickets*, and keeping the books and accounts of the company relating to such business transactions." *Heins*, 220 S.W. at 10. (emphasis added). In light of these cases, we conclude that the sale of airline tickets is an integral component in the day-to-day operation of a passenger airline and, as such, is a significant part of the airline's "usual and customary business."

■ Respondent's ultimate objections are that the recognition of an agency relationship between Southwest and the travel agencies will frustrate the policy behind the venue statutes to serve the convenience of the litigants and will encourage "forum shopping" by plaintiffs. However, under the broad language of § 508.040, a corporation may be subjected to suit in a wide variety of venues—in every county where the corporation maintains an "office or agent." The legislature has imposed no limitation on the term "agent" except that the agent must be engaged in the "usual and customary business" of the principal. Absent other statutory limitations or restrictions, we are unwilling to distort the traditional and well-accepted notions of "agent" and "agency" in order to accommodate respondent's concerns.

The writ of mandamus is made permanent, and respondent is ordered to reinstate relator's petition.

ROBERTSON, C.J., and COVINGTON, BENTON, and PRICE, JJ., concur.

HOLSTEIN, J., dissents in separate opinion filed.

THOMAS, J. concurs in opinion of HOLSTEIN, J.

HOLSTEIN, Judge, dissenting.

I respectfully dissent. As the majority opinion acknowledges, the term "agent" has more than one definition. Thus, when undefined in a statute, the word lends itself to judicial construction. In this particular statute, the word "agent" is modified by the phrase "for the transaction of [the corporation's] usual and customary business." This phrase has the effect of compounding the ambiguity.

Whenever ambiguity exists in a statute, it is the responsibility of the courts to construe the statute consistently with what the legislature intended. *MaGee v. Blue Ridge Prof. Bldg.*, 821 S.W.2d 839, 843 (Mo. banc 1991); § 1.010, RSMo 1986. When attempting to discern legislative intent it is essential to consider the purpose of the statute. *State ex rel. Rhodes v. Crouch*, 621 S.W.2d 47, 49 (Mo. banc 1981). The words used must be considered in the context in which they appear. In this case, the context is a corporate venue statute. The corporate venue statute was not designed to maximize the possibility of forum shopping. The purpose is to provide the parties a reasonably convenient location in which to try the lawsuit. *State ex rel. Pagliara v. Stussie*, 549 S.W.2d 900, 903 (Mo.App.1977). The Court should not adopt a construction of the venue statute that defeats the legislative purpose.

Applying those rules to this case, the question becomes whether this Court is persuaded that the legislature intended to include a travel agent appointed by an airline to promote and sell passenger tickets as the airline's "agent for the transaction of [the airline's] usual and customary business." In the context of the corporate venue statute, I am convinced such appointment is not the sort of agency intended by the legislature to support venue.

To be an agent for the transaction of the "usual and customary business" of a corporation connotes some degree of discretion. In this case, the so-called "agent" had absolutely no discretion. The terms of the sale of the tickets are dictated entirely by Southwest Airlines. This includes the fares charged for various flights, the date and time that flights would depart and arrive, the number of seats and classes of seating available, and whether a particular ticket is refundable. In effect, a travel agency is merely a broker who is authorized by the airline to receive offers to purchase tickets. Acceptance of the offers

are conditioned on whether there is a flight available at the time and to the place required by the passenger, the availability of space on the particular flight sought to be booked and the payment of the required fare. The availability of space on a scheduled flight as well as the payment of the fare is determined electronically before the ticket is issued by the travel agent. Certainly, a travel agent has no actual, implied or apparent authority to set fares, issue tickets when seats are not available or bind the airline to fly on a date not scheduled or to a destination not served by the airline. The travel agent's duties are purely ministerial and mechanical in nature. The absence of any discretion in the performance of its duties and that the duties are a very narrow part of the overall business of transportation of passengers for hire on a regularly scheduled airline leads me to believe that the legislature did not intend mere travel agents to be considered within the ambit of an "agent for the transaction of [an airline's] usual and customary business."

Persuasive in this regard are cases construing the Texas corporate venue statute. That statute authorizes venue in any Texas county where a corporation has "an agency or representative." *Tex.Civ.Prac. & Rem. Code Ann.* § 15.036 (1993). The Texas courts have concluded that under their corporate venue statute, the word "agency" connotes one having discretionary power relating to corporate affairs of the principal. *Rouse v. Shell Oil Co.*, 577 S.W.2d 787, 789 (Tex.Civ.App.1979). *See also Milligan v. Southern Express*, 151 Tex. 315, 250 S.W.2d 194, 198 (1952) (in the context of the venue statute, "agency or representative" is held to mean the defendant's business is, in more less regular and permanent form, actually conducted in the county of suit or one in which a party possessing broad powers from the corporate defendant resides in the county). The Texas venue statute has been construed more narrowly than the Missouri statute is construed today, even without the benefit of the modifying language "customary and usual business."

In a slightly different context, this Court in *Litzinger v. Pulitzer Publishing Co.*, 356 S.W.2d 81 (Mo.1962), was called on to decide if a St. Louis City newspaper which had an office to which a reporter was regularly assigned in St. Louis County maintained a "business office of the defendant" newspaper so as to justify service of process in the county. The Court held, *inter alia,* that serving suit papers on the reporter assigned to the office was insufficient because maintenance of an office for gathering and transmitting news does not constitute "doing business" of the newspaper. 356 S.W.2d at 87. While conceding that the *Litzinger* decision was made in the context of a rule relating to service of process, the rationale seems equally applicable here in determining whether the travel agent was an agent of defendant in its "usual and customary business."

The result I would reach is also supported, albeit indirectly, by the holding in a recent court of appeals case, *State ex rel. Cameron Mutual Ins. Co. v. Koehr*, 850 S.W.2d 374 (Mo.App.1993). There the Missouri Court of Appeals, Eastern District, refused to extend the definition of "agent" for venue purposes to include an independent insurance adjuster who, on behalf of the defendant insurance company, performed "occasional nonbinding investigation, adjustment and appraisal services" in a county where the defendant had no other contacts. 850 S.W.2d at 326. It is obvious to anyone with even a passing acquaintance with the insurance adjusting practice that insurance adjusting normally includes obtaining releases from claimants in return for delivering settlement payments from insurers. It is strained, at least, to suggest that this activity does not bind the insurer and modify the legal relations between the insurer and third parties.

I also believe this case is distinguishable from *State ex rel. Cameron Mutual Ins. Co. v. Reeves*, 727 S.W.2d 916 (Mo.App. 1987). Insurance agents perform essentially all the duties necessary to enter into and complete the sale of an insurance contract. In addition, insurance agents, ordinarily, have the authority to bind the insurer, at least temporarily. When a claim arises,

the insured normally contacts the agent first. The agent then makes the first report of claim on behalf of the insurer. On small claims, it is not at all unusual for the insurance agent to actually pay the claim for the insurance company out of funds made available for that purpose by the insurer. In sum, the insurance agent performs a role in virtually all the activities related to the insurance business. By contrast, the services rendered by a travel agent as part of the airline business are minimal. Most of the services are performed by pilots, flight attendants, baggage handlers, mechanics and the like. Discretion as to the amount of fares, where to fly, and when to fly are reserved to corporate management.

The majority's view that the Restatement of Agency conclusively establishes the meaning of the word "agent" is not supported by the restatement. The Restatement of Agency begins with this caveat:

> The brevity of a definition necessarily makes it an incomplete and inaccurate statement. Like other groups of words, it must be used with discretion. Much confusion has resulted from inaccurate definitions and from the misuse of definitions.

*Restatement (Second) of Agency*, Introductory Note, Topic I, Definitions (1958). In the comment following the first section, a more direct warning is given against the strict application of the restatement's definitions when construing statutes:

> Whether the word "agent" as used in a statute corresponds to the meaning here given depends, with other factors, upon the purpose of the statute.

*Restatement (Second) of Agency, § I*, Comment on subsection (3) (1958). If the authors of the restatement did not intend that their definition of "agent" serve as a basis for defeating a statutory purpose, this Court should not do so.

I believe this Court should not take the technical approach of adopting a strict construction of a venue statute based on the definitions of words found in the Restatement of Agency. We are here construing ambiguous statutory language and should consider the words used in light of the overall context, the statute's purpose, commercial reasonableness and the realities of life. We should not construe the statute in such a way as to defeat the statutory purpose of convenience to the parties. Most importantly, we should not assume the legislature intended an absurd or unreasonable construction of the statute. *David Ranken Tech. Inst. v. Boykins*, 816 S.W.2d 189, 192 (Mo. banc 1991). Hopefully, the legislature will at the first opportunity make its intent more clear.

For these reasons, I respectfully dissent.