STATE ex rel. FORD MOTOR
COMPANY, Relator,

v.

The Honorable Max E. BACON, Circuit
Court of Greene County, Missouri, Associate Division, Respondent.

No. SC 83559.

Supreme Court of Missouri,
En Banc.

Jan. 8, 2002.

Rehearing Denied Jan. 22, 2002.

Robert T. Adams, Douglas W. Robinson, Julie A. Shull, Kansas City, for Relator.

Tamara F. deWild, Richard E. Davis, Springfield, for Respondent.

STEPHEN N. LIMBAUGH, JR., Chief Justice.

Relator, Ford Motor Company (Ford), is the defendant in several products liability

suits pending before respondent in the Circuit Court of Greene County.[1] In each case, Ford raised a defense of improper venue and moved to transfer the case to a county where venue was proper. Thereafter, the cases were consolidated for purposes of deciding the venue issue, and the trial court overruled Ford's motions. Ford then sought a writ of prohibition to prevent respondent from proceeding further with the cases, and this Court issued a preliminary order in prohibition. Having determined that venue is improper in Greene County, the writ is now made absolute.

Venue in Missouri is determined by statute. Because Ford is a corporation and is the only party defendant, the relevant venue statute is section 508.040, RSMo 2000:

> Suits against corporations shall be commenced either in the county where the cause of action accrued ... or in any county where such corporations shall have or usually keep an office or agent for the transaction of their usual and customary business.

It is undisputed that the causes of action in the several suits did not accrue in Greene County and that Ford does not maintain an office in Greene County. Instead, plaintiffs predicate venue on the fact that Ford Motor Credit Company (Ford Credit), Ford's wholly-owned subsidiary, does maintain an office in Greene County and that Ford Credit acts as Ford's "agent for the transaction of its usual and customary business" there. Accordingly, it must be determined whether Ford Credit is Ford's agent.

■ "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement (Second) of Agency sec. 1 (1958); *State ex rel. Elson v. Koehr*, 856 S.W.2d 57, 60 (Mo. banc 1993). The Restatement specifically states, "A corporation does not become an agent of another corporation merely because a majority of its voting shares is held by the other." Restatement (Second) of Agency sec. 14M. Therefore, an agency relationship between a parent and its subsidiary may only be established if the elements of an agency relationship exist. *Id.* at sec. 14.

■ In *Elson*, this Court adopted the Restatement definition of an agency relationship, which sets out three essential elements:

1) that an agent holds a power to alter legal relations between the principal and a third party; Restatement (Second) of Agency sec. 12;

2) that an agent is a fiduciary with respect to matters within the scope of the agency; Restatement (Second) of Agency sec. 13; [and]

3) that a principal has the right to control the conduct of the agent with respect to matters entrusted to the agent; Restatement (Second) of Agency sec. 14.

*Elson*, 856 S.W.2d at 60. The absence of any one of these three characteristics defeats the purported agency relationship. *State ex rel. Bunting v. Koehr*, 865 S.W.2d 351, 353 (Mo. banc 1993).

This case must be resolved against respondent and plaintiffs because of the absence of the first element alone. The proof as to that element is in an affidavit filed by Ford in support of its motion

---

1. Those cases are: *Duffey v. Ford*, No. 397AC3980; *James v. Ford*, No. 397AC4203; *Brown v. Ford*, No. 398AC0284; *Conrad v. Ford*, No. 398AC2020; and *Spicer v. Ford*, No. 398AC1488.

contesting venue. The text of the affidavit is as follows:

1. My full name is Ann On–Yee Lee, and I am employed by Ford Motor Credit Company ("Ford Credit") as Litigation Counsel.

2. I have personal knowledge of the corporate structure of Ford Motor Credit Company, and its legal relationship to Ford Motor Company. I also have personal knowledge of the business of Ford Motor Credit Company.

3. Ford Motor Credit Company is a wholly-owned indirect subsidiary of Ford Motor Company.

4. As a wholly-owned indirect subsidiary of Ford Motor Company, Ford Credit has its own offices and directors. It also has its own Articles of Incorporation and is organized under the laws of Delaware. Its principal place of business is Dearborn, Michigan.

5. Ford Credit is in the business of purchasing retail contracts and leases of automobiles entered into by the dealer and its retail and commercial customers. Ford Credit also participates in commercial lending, including providing automobiles wholesale inventory financing, and capital, revolving, and mortgage loans to Ford and non-Ford dealers.

6. Regarding wholesale floor plan (inventory) financing, a dealer orders vehicles from the manufacturer, which may be Ford Motor Company. Ford Credit advances funds to the manufacturer for the purchase of the vehicles. Ford Credit takes a security interest in the inventory and assets of the dealership to secure the financing of the vehicles. When the dealer sells a vehicle, the security interest is discharged upon payment to Ford Credit by the dealer. Ford Credit does not act as an agent of the manufacturer for these purchases.

7. Regarding retail consumer purchases of Ford vehicles, Ford Credit finances vehicle purchases by consumers who purchase Ford vehicles from automobile inventory owned by the dealerships. If a consumer chooses to finance a vehicle, the dealer (creditor) and the consumer (debtor) enter into a retail installment contract which contract could be sold to Ford Credit at the dealer's discretion. Upon purchase, Ford Credit is assigned the creditor's rights and holds a security interest in the vehicle. Ford Credit does not act as an agent of the manufacturer for these purchases.

8. A consumer is not required to finance a Ford Motor Company vehicle through Ford Credit. A consumer may choose to finance a vehicle through a bank or other credit service which may offer similar products and services.

9. The manufacturer is not a party at any time to the retail installment contract.

10. Regarding automobile leases, the dealer sells the vehicle and the lease agreement to Ford Credit. The lease agreement, as assigned to Ford Credit, does not affect the relationship between the consumer or a dealer and the manufacturer. The manufacturer is not a party to the lease agreement.

11. Interest and principle [sic] payments from consumers and dealers are received by Ford Credit.

12. Interest and principle [sic] payments received by Ford Credit are not segregated and treated as receivables or held in trust for Ford Motor company. Ford Credit does not segregate money from each installment contract with the purchaser of a Ford vehicle and forward a percentage to Ford.

13. Ford Motor Company and Ford Credit are not parties to any agreement restricting or conditioning Ford Credit's ability to finance a customer's purchase of a vehicle or a dealer's inventory purchases.

The dispositive provisions of the affidavit are 1) that Ford is not a party to Ford Credit's financing contracts, either with Ford dealers and non-Ford dealers, or the customers of those dealers, and 2) that Ford Credit is not subject to any agreement with Ford "restricting or conditioning" its ability to finance either dealers' floorplans or customers' purchases of vehicles. These factual allegations, which are uncontroverted, establish that Ford Credit has no power to alter legal relations between Ford Motor Company and third parties. Therefore, Ford Credit does not act as agent for Ford Motor Company.

The dissent concludes that an agency is established because "Ford Credit provides financing at Ford's direction for the purpose of facilitating the sale and distribution of vehicles manufactured by Ford." This conclusion is ultimately based on a refusal 1) to acknowledge that Ford Credit is a corporate entity independent from Ford, and 2) to be bound by the elements of the Restatement of Agency that this Court adopted in *Elson v. Koehr.* Absent allegations and evidence that would justify piercing the corporate veil, Ford Credit does in fact operate independently from Ford. Although Ford owns Ford Credit, and in that sense Ford engages in the business of financing purchases of Ford products and floor plans for Ford dealers, it does not follow that Ford Credit has the power to alter legal relations between Ford and any third party. Neither plaintiff nor the dissent has identified any acts or representations—other than Ford's ownership of Ford Credit as a financial services company—that would lead a reasonable person to believe that Ford Credit has the power to do so.

In addition, the two federal cases cited by the dissent, *Colonial Ford v. Ford,* 592 F.2d 1126 (10th Cir.1979), and *DeValk Lincoln Mercury v. Ford,* 550 F.Supp. 1199 (N.D.Ill.1982), are inapposite. These cases were not decided on conventional principles of the law of agency, but rather on specific federal legislation—the Automobile Dealers' Day in Court Act—under which an "automobile manufacturer" is defined to include any corporation that is "under the control of such manufacturer." *Colonial Ford v. Ford,* 592 F.2d at 1128–29; *DeValk Lincoln Mercury,* 550 F.Supp. at 1201–02. In both cases, Ford Credit was held to be under the "control" of Ford Motor Company in order to implement the "broad remedial purposes" of the act. *Id.* Tellingly, the respondent in the case at hand declined to cite these cases, knowing full well that the analogy to Missouri venue cases is misplaced.

The preliminary order in prohibition is made absolute, and the trial court is ordered to transfer the cases to a proper venue.

BENTON and PRICE, JJ., and DOLAN and RICHTER, Sp.JJ., concur.

WHITE, J., dissents in separate opinion filed.

WOLFF, J., concurs in opinion of WHITE, J.

HOLSTEIN and STITH, JJ., not participating.

RONNIE L. WHITE, Judge, dissenting.

I respectfully dissent. The analysis the principal opinion uses to arrive at its conclusion frankly mystifies me. The principal opinion is willing to concede that Ford Credit operates under Ford's direction and control when it provides financing to Ford dealers and customers and that it does so for the purpose of selling Ford cars. Even though federal courts recognize this relationship for what it is—an agency—the principal opinion says that it is not an agency because "Ford Credit has no power to alter legal relations between Ford Motor Company and third parties." I have no idea what the principal opinion means by this, since the majority accepts that Ford may incur liability to third parties based upon actions taken by Ford Credit, which surely "alters the legal relations" between Ford and those parties. The counterintuitive results produced by the principal opinion's undisclosed test for determining whether a purported agent has the power to change a principal's legal status as to third parties are less puzzling than the fact that the majority reaches the question. Although it was required to show that Ford Credit had "no power" to act as its agent, Ford offered evidence about only a portion of the activities Ford Credit conducts on its behalf. Ford failed even to meet its burden of production (much less proof) that Ford Credit was not operated as its office or agent for the transaction of Ford's usual and customary business, and respondent acted well within his jurisdiction in refusing to transfer venue.

The burden of production and of proof were on Ford to demonstrate that venue was improper.[1] To prevail, Ford had to show that it did not "have or usually keep an office or agent for the transaction of [its] usual and customary business" in Greene County.[2] Instead of offering detailed evidence regarding its relationship with Ford Credit, evidence from which one could conclude that Ford Credit did not act as Ford's agent, Ford offered just two brief affidavits that would have to be described as self-serving, if they were not so incomplete.

The first affidavit, not discussed in the principal opinion, is that of a low-level Ford employee and seeks to establish that Ford is only in the automotive manufacturing business and is not in the business of providing financial services. Plaintiffs demolished this claim, showing that Ford consistently holds itself out to the public, its shareholders and to the Securities and Exchange Commission as one of the "largest providers of financial services in the United States." Ford reported more than $ 21 billion in revenue and $ 1 billion in profits from its financial services business in 1994, a business it conducts entirely through Ford Credit and other similar operating units. Although the principal opinion complains that I refuse to recognize the independent corporate existence of Ford Credit, that complaint might more accurately be directed at Ford, which is perfectly willing to ignore the supposed separation between its business and that of Ford Credit when it suits its purposes to do so.

Instead of explaining how it is even theoretically possible for Ford to operate a twenty billion dollar financial services business and yet have neither offices nor agents for the conduct of that business, the

---

**1.** See Rule 55.27(a)(3) (2000); *State ex rel. Johnson v. Griffin,* 945 S.W.2d 445, 446 (Mo. banc 1997); *State ex rel. Breckenridge v. Sweeney,* 920 S.W.2d 901, 902 (Mo. banc 1996); *State ex rel. Clark v. Gallagher,* 801 S.W.2d 341, 344 (Mo. banc 1990).

**2.** Section 508.040, RSMo 2000.

principal opinion limits itself to the more abstruse question of whether Ford Credit has the power to alter the legal relations between Ford and third parties. The principal opinion says that Ford has proven that Ford Credit lacks this power because it has shown that Ford is not a party to Ford Credit's floorplan or customer financing arrangements and is not a party to an agreement with Ford "restricting or conditioning" those contracts.

These facts are artfully stated to disguise the real substance of the relationship between the companies. Ford and Ford Credit are subject to an agreement under which Ford Credit is prohibited from reducing the level of financing it provides to dealers, in return for which, Ford agrees to completely guarantee the profitability of Ford Credit. Thus, while Ford may not restrict Ford Credit's ability to offer financing to Ford dealers, it does, in fact, require that financing, a fact that is equally indicative of control. The federal courts have noted that, as a captive finance company, Ford Credit gives Ford tremendous leverage over its dealers, and "it would be unrealistic to suppose that a wholly owned subsidiary working to facilitate the parent's distributive activities would act other than to promote the desires of its parent."[3] Recognizing the reality of the relationship, federal courts have rejected the idea that Ford Credit is an agent of Ford only if Ford is a party to a financing contract. Instead, to show an agency relationship, a party need not show that Ford was a party to a particular transaction, but only that Ford Credit provided financing to facilitate the sale of Ford vehicles.[4]

Under this doctrine, Ford Credit's provision of financing to Ford dealers, as required by its contract with Ford, subjects Ford to various duties under the Automobile Dealers Day in Court Act[5] and exposes Ford to liability under the Act if it fails to carry out those duties. Even if, as the principal opinion holds, principles of federal law are so repugnant to Missouri agency law as to be unworthy of consideration, the federal determination has real consequences nevertheless. Even if Ford Credit would not otherwise be Ford's agent, the fact Ford can held liable for the acts of Ford Credit in extending financing means that Ford Credit unmistakably has the power to alter the legal relationship between Ford and its dealers. The principal opinion does not offer any definition of what it means to have the power to alter a principal's legal relations, much less one that would exclude exposing the principal to liability at federal law. It is not necessary, as the principal opinion suggests, to ignore *Elson v. Koehr* to find that Ford Credit is Ford's agent. Rather, the fact that federal courts treat Ford Credit as an agent means that Ford satisfies the "power to alter legal relations" prong of the *Elson* test, and that Ford Credit operates as Ford's agent with respect to its financing activities.

The principal opinion can only reach this question, however, because it simply ignores Ford's failure to offer any evidence regarding whether it acts as Ford's agent in conducting the many other activities it performs for Ford. These include making loans to Ford affiliates, financing receivables of Ford and its subsidiaries, and managing the activities of Ford subsidiaries, such as Ford's captive insurance busi-

---

3. *Colonial Ford v. Ford,* 592 F.2d 1126, 1129 (10th Cir.1979).

4. *See id.; DeValk Lincoln Mercury, v. Ford,* 550 F.Supp. 1199, 1202 (N.D.Ill.1982).

5. 15 U.S.C., sec. 1221, et. seq.

ness, American Road. Ford's affidavits do not mention these activities, and therefore cannot logically be read to prove that Ford Credit lacks the power to affect Ford's legal rights and obligations in connection with these activities, activities which would seem difficult to perform without such authority.

The summary analysis and rationale the principal opinion employs here betrays, I think, the real basis for its decision: an ingrained hostility to the idea that plaintiffs should have choices regarding where to bring their lawsuits. Because this is no more than a naked policy choice (and one this Court has previously said should be made by the legislature), the principal opinion (as in other recent cases) does not acknowledge that it now construes venue statutes strictly to restrict plaintiffs' choice of venue.[7] Today's decision shows that this Court will countenance the fiction that a corporation that actively conducts its business through subsidiaries is no more than a passive investor in those subsidiaries, giving corporations an incentive to manipulate their corporate structure in order to secure favorable venue. I would think that the Court would, if it was concerned about forum shopping, be as eager to discourage defendants from the practice as it is plaintiffs.

Ford chose to present the court with what is, at best, an incomplete description of its relationship with Ford Credit. Because the details of that relationship are exclusively within Ford's control, the trial court would have been entitled to presume that this evidence would have been unfavorable to Ford, even if Ford didn't bear the burden of production and of proof on this point. In any case, plaintiffs established beyond any serious doubt that Ford

Credit provides financing at Ford's direction for the purpose of facilitating the sale and distribution of vehicles manufactured by Ford. I would hold, as the federal courts have done, that this is a sufficient showing to treat Ford Credit as Ford's agent, and, therefore, to establish venue in Greene County.

I would quash the preliminary order.

---

7. *See State ex rel. Linthicum v. Calvin,* 57 S.W.3d 855 (Mo. banc 2001); *State ex rel. Miracle Rec. Equip. Co. v. O'Malley,* 62 S.W.3d 407 (Mo. banc 2001); *State ex rel. Landstar Ranger, Inc. v. Dean,* 62 S.W.3d 405 (Mo. banc 2001).