MAJOR SAVER HOLDINGS, INC., Appellant–Respondent,

v.

EDUCATION FUNDING GROUP, LLC, d/b/a Major Saver, Respondent–Appellant.

Nos. WD 73447, WD 73493.

Missouri Court of Appeals, Western District.

Oct. 18, 2011.

---

500

Anthony Landery Gosserand, Kansas City, MO, for appellant-respondent.

Jeanette Gaddie and Troy Douglas Renkemeyer, Overland Park, KS, for respondent-appellant.

Division Three: JAMES E. WELSH, P.J., JAMES M. SMART, JR., and JOSEPH M. ELLIS, JJ.

**PER CURIAM:**

Major Saver Holdings, Inc. ("Major Saver") appeals the trial court's judgment in favor of the defendant in its breach of contract action against Education Funding Group, L.L.C. ("Education Funding"). On cross-appeal, Education Funding contests the amount of the award of attorneys' fees. The judgment is affirmed in all respects. Education Funding's motion for attorneys' fees on appeal is granted. We remand to the trial court for assessment of those fees.

**Background**

This dispute began with a parting of the ways between the appellant company, Major Saver, and one of its former owners, Major Hammett, II, in late 2007. Sometime before October 8, 2008, Hammett began working for the respondent company, Education Funding. Hammett's departure from Major Saver resulted in litigation between Major Saver and Education Funding. The companies are both in the business of arranging and managing fundraising campaigns for education foundations, school districts, and parent teacher associations. The companies are in direct competition with one another. The fundraising efforts consist primarily of the companies creating restaurant discount cards that are then sold by the students to members of the community.

As part of a mediated end to the lawsuit related to Hammett's separation from Major Saver, Major Saver and Education Funding (among others) entered into a "Settlement Agreement and Release of All Claims." That agreement contained a provision that limited Education Funding's ability to solicit business from various Missouri school districts for the period of October 8, 2008 to August 31, 2012. Specifically, Paragraph 8 of the agreement provides:

(a) *Non-solicitation.* The Defendants agree that they *will not solicit* the school districts listed below, meaning that the defendants *will not directly or indirectly initiate contact with* these schools. The Defendants may provide proposals or bids, but only if requested by these schools.

(Emphasis added.) The agreement defined "School Districts" as "the individual or individuals who are charged with making fundraising decisions (*i.e.*, those who would make the decision to contract with Defendants or Major Saver)" for specific schools. Significant to this case, among those schools was the Republic School District. In the lawsuit that is the subject of this appeal, Major Saver claimed that Education Funding violated the non-solicitation clause with regard to that school district.

The Republic School District had a prior relationship with both Major Saver and with Mr. Hammett. Major Saver began providing fundraising services for Republic in 2004. Between 2004 and 2007, Mr. Hammett worked with the Republic School District on behalf of Major Saver. In 2008, Republic again used Major Saver's services for its fundraising drive, but this time, Hammett was not involved with the campaign. Republic raised less money in 2008 than it had raised in 2007. In December 2008, Republic and Major Saver discussed preliminary dates for the upcoming 2009 fundraising drive.

Tracy Hankins is an elementary school principal for the Republic School District. The school principals in the Republic district have direct, hands-on involvement with the fundraising programs provided by the parties in this case. Thus, she was acquainted with Mr. Hammett and had worked closely with him in the past.

In March 2009, Ms. Hankins saw Mr. Hammett at an educational conference she was attending. She approached Mr. Hammett and mentioned that their 2008 fundraising numbers had been down. Hammett told her he was no longer associated with Major Saver; he said he had "split to a new company." She then asked "what he could do for us about getting the numbers back up." Hammett told her that "[i]t would have to be with his new company if that happened." Ms. Hankins asked Hammett "how Education Funding Group [his new company] could do the program."

After returning from the conference, Hankins telephoned Stan Coggin, President of the Republic Community Foundation, and told him about her conversation with Hammett. The Republic Community Foundation is a community organization that was responsible for the district's fundraising efforts. The Foundation is a not-for-profit corporation that was formed for the specific purpose of supporting the community and the school district through grants and gifts. Hankins suggested a lunch meeting between the three of them, and Coggin agreed. Ms. Hankins understood Coggin as asking her to have Hammett call him to schedule the meeting details. At the end of the conversation, Coggin understood that Ms. Hankins would contact Hammett and ask him to call Coggin.

In early April 2009, after her conversation with Coggin, Hankins attended another conference at which she again saw Mr. Hammett. Hankins told Hammett that she and Coggin would like to set up a lunch meeting with him. She gave Hammett Coggin's telephone number and asked him to call Coggin to finalize the arrangements.

Thereafter, Hammett called Coggin and they arranged a luncheon meeting on April 21st. At that meeting, Hammett described to Coggin and Hankins the services that Education Funding could provide for their 2009 fundraising drive.

Coggin said he would ask the Board if it would permit Hammett to make a presentation on Education Funding's behalf. Hammett paid for the lunch.

The Board agreed to hear Hammett's presentation. Hammett made his presentation at the Board's next meeting in May, and the Board voted to use Education Funding for its 2009 fundraising. Coggin then sent a letter to Major Saver informing it that the Foundation would be using Education Funding for the 2009 campaign. The 2009 campaign took in a total of $46,440, of which, Education Funding's share was $23,220.

Major Saver filed a petition for breach of contract against Education Funding in December 2009. It alleged that Education Funding, through Hammett, had breached the terms of the settlement agreement by improperly soliciting the Republic Community Foundation. Major Saver sought damages of the amounts that Education Funding earned in the 2009 campaign.[1] It also sought an award of its attorneys' fees and costs as the prevailing party, pursuant to the terms of the settlement agreement.

The parties presented evidence and arguments at a bench trial in December 2010. By agreement of the parties, excerpts from the depositions of both Tracy Hankins and Stan Coggin were read into the record. Mr. Hammett testified before the court, as did representatives from both Major Saver and Education Funding.

Based on the evidence outlined above, the trial court concluded that Education Funding did not breach the terms of the settlement agreement through any direct or indirect solicitation of Republic. Specifically, the court found that the initiation and solicitation originated with Ms. Hankins, in that she "twice, at different times," initiated contact with Hammett. The court found that Hankins was acting as an "agent" of Coggin when she asked Hammett to telephone Coggin, and that Hammett telephoned Coggin in response to that request. The court found that the Republic Community Foundation and Coggin, in his capacity as its president, were "decision makers" for purposes of the settlement agreement. The court found that Coggin, acting in that capacity, initiated contact with Hammett by his request for information about Education Funding's services, and, thus, the communication between Hammett and Coggin did not breach the agreement. Further, the court found that Hammett's presentation to the Foundation was made in response to a request from the Foundation, which was sent in a letter by Coggin.

The trial court entered judgment in favor of Education Funding and awarded it $10,000 in attorneys' fees pursuant to the terms of the written settlement agreement. Both parties appeal.

### Major Saver's Appeal

Major Saver says the trial court erred as a matter of law in concluding that Education Funding did not violate the terms of the parties' settlement agreement. In three points, Major Saver argues that the court incorrectly found (1) that Hankins was an "agent" of Coggin, (2) that Coggin was a "decision maker," as defined by the settlement agreement, and (3) that Education Funding's contacts with Coggin and the Foundation did not constitute "indirect solicitation," as prohibited by the settlement agreement.

---

1. As a penalty for violating the non-solicitation clause, the settlement agreement required the Defendants to "disgorge 50% of the gross revenue received from any schools where the violation occurred."

### Standard of Review

As in any court-tried case, we will affirm unless there is no substantial evidence to support the judgment, it is against the weight of the evidence, or it erroneously declares or misapplies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will set aside a judgment on the basis that it is against the weight of the evidence with caution and only if we firmly believe that the judgment is wrong. *Id.* We defer to the trial court's resolution of conflicts in the evidence and give due regard to its opportunity to adjudge witness credibility. *MC Dev. Co., LLC v. Cent. R–3 Sch. Dist. of St. Francois Cnty.*, 299 S.W.3d 600, 602 (Mo. banc 2009); Rule 84.13(d). We view the evidence and its reasonable inferences in the light most favorable to the trial court's judgment, and we disregard all evidence and inferences to the contrary. *Asamoah–Boadu v. State*, 328 S.W.3d 790, 793 (Mo.App.2010). We review issues of law *de novo. Id.*

### No "Solicitation" by Education Funding

The overarching question on appeal is whether Hammett's actions on behalf of Education Funding constituted "indirect solicitation" of Coggin or the Foundation in violation of the settlement agreement. Whether or not Hankins was acting as Coggin's "agent" or Coggin was a "decision maker" are merely sub-issues under that question. Thus, we address the overarching issue first.

As explained, the settlement agreement's non-solicitation clause prohibits Education Funding from "soliciting" the Republic School District, among others. The agreement explains that this means "the

defendants *will not directly or indirectly initiate contact with* these schools." (Emphasis added.) Education Funding may provide proposals or bids under the agreement, but only if requested by the school districts. The term "school districts" is defined as "the individual or individuals who are charged with making fundraising decisions," *i.e.,* the "decision makers."

According to Major Saver, Education Funding breached the terms of the settlement agreement through the actions of Hammett by: (1) *indirect* solicitation of Coggin through Hankins; (2) *direct* solicitation of Coggin by calling him on the telephone to make arrangements for a meeting to discuss the 2009 fundraising campaign; and (3) *indirect* solicitation of the Republic Community Foundation through Coggin. Major Saver says that the "Foundation had already agreed to use Major Saver for its 2009 fundraising campaign" at the time of Hammett's solicitation; that there was no evidence the Foundation independently requested any proposal from Education Funding prior to Hammett's contacts with Coggin (via Hankins); and that the Foundation's request to hear Hammett's proposal came only as a result of Hammett's direct and indirect solicitation through Hankins and Coggin.

Major Saver contends that our review of this case is *de novo* because the evidence was "uncontroverted" and much of the testimony upon which the court relied (*i.e.,* that of Ms. Hankins and Mr. Coggin) was presented via deposition. Major Saver relies on cases which state that in a case tried on stipulated facts or strictly on a written record, the only issue on appeal is whether the court drew the proper legal conclusions from those facts.[2] This case

---

**2.** *See, e.g., Hunt v. Everett*, 181 S.W.3d 248, 249 (Mo.App.2006); *A.R.B. v. Elkin*, 98 S.W.3d 99, 104 (Mo.App.2003); *In re Estate of Parker*, 25 S.W.3d 611, 614–15 (Mo.App. 2000); *see also Bauer v. Bauer*, 97 S.W.3d 515, 519 (Mo.App.2002) (case decided by substitute judge solely on transcript of trial).

was not tried on stipulated facts or strictly on a written record, however. While some of the evidence was presented via deposition, there also was live testimony (specifically that of Mr. Hammett) which addressed the critical issues in the case. Thus, the trial court's credibility determinations were highly relevant to that extent.

In cases where our review is governed by *Murphy v. Carron*, we "defer[ ] to the trial court as the finder of fact in determinations as to whether there is substantial evidence to support the judgment and whether that judgment is against the weight of the evidence, even where those facts are derived from pleadings, stipulations, exhibits and depositions." *In re Detachment of Territory from Pub. Water Supply Dist. No. 8*, 210 S.W.3d 246, 249 (Mo.App.2006) (quoting *Bus. Men's Assurance Co. of Am. v. Graham*, 984 S.W.2d 501, 506 (Mo. banc 1999)); *Jarrell v. Dir. of Revenue*, 41 S.W.3d 42, 46 (Mo.App. 2001). "In such instances, appellate courts defer to the facts-not witness credibility-as found by the trial court in reviewing whether there is substantial evidence to support a judgment and determining whether the judgment is against the weight of the evidence." *Jarrell*, 41 S.W.3d at 46 (internal quotations omitted).

Based upon our own independent review of the facts and application of the law to those facts, we conclude that the trial court's judgment is correct. The evidence presented at trial supports the trial court's determination that Education Funding did not, through Hammett or anyone else, initiate direct or indirect solicitation in violation of the settlement agreement. Rather, the evidence showed that Hankins and Coggin "initiated the contact" with Hammett and Education Funding and, thus, they (and, ultimately, the Foundation) were the "solicitors."

Hammett and Hankins both testified that Hankins approached Hammett at a conference, told him that her school's fundraising dollars were down in 2008, and asked "what he could do for us about getting the numbers back up" in 2009. Hammett told her he had left Major Saver and that "[i]t would have to be with his new company if that happened." Hankins asked Hammett about how his new company could "do the program." [3] Thus, the

---

**3.** Following is the pertinent testimony from Ms. Hankins' deposition:

Q. Okay. So you approached—you're saying you approached [Mr.] Hammett, correct?

A. That's correct.

Q. Okay. Tell me about how that happened?

A. I don't—if I recall I don't think it was in the exhibit hall. I think we were actually standing in the lobby of Tan–Tar–A and I was oblivious to Major Saver splitting from [Education Funding]. I did not know the split had happened.

So I asked him about the numbers being down. He then told me that he was no longer with Major Saver and that he had split to a new company.

So at that time I asked him about what he could do for us about getting the numbers back up, because our numbers had dropped significantly and how that could happen.

He explained to me that he was no longer with Major Saver. It would have to be with his new company if that happened.

. . . .

Q. Okay. And in the second sentence [of your affidavit] you say, "I stated to him the numbers were down during last year's fund raising campaign at the school of which I am a principal. And asked him how Education Funding Group, EFG, could do the program."

Did I read that correctly?

A. Yes.

. . . .

Q. Okay. And then you state, "Mr. Hammett stated to me that [Education Funding] could do the program and nothing else was discussed on this subject."

Correct?

evidence shows that it was Hankins, and not Hammett, who first raised the issue of fundraising. In any event, Hankins was not a "decision maker" for the school district and, so, contact with her would not violate the non-solicitation clause.

Hankins called Coggin after speaking with Hammett and told him about their conversation. There was no evidence that Hankins was acting as an "agent" of Hammett (or Education Funding) in contacting Coggin. Both Coggin and Hankins testified that Hankins suggested a lunch meeting between the three of them, and Coggin agreed. Hankins said that Coggin asked her to have Hammett call him to schedule the meeting details. Although he did not remember the exact words used, Coggin said that at the end of the conversation, he understood that Hankins would contact Hammett and ask him to call and that he "expected" Hammett's call.[4]

Hankins again approached Hammett when she saw him at another conference and told him that she and Coggin would like to set up a lunch meeting with him. Hankins and Hammett both testified that she gave Hammett Coggin's telephone number and asked him to call Coggin to finalize the arrangements. Thus, while it is true that Hammett telephoned Coggin, the evidence supported the court's finding that he did so at Coggin's request (relayed via Hankins). In other words, Coggin solicited Hammett's call.

Hammett testified that, based on that request, he called Coggin and they arranged a meeting. At that meeting, Hammett described the services that Education Funding could provide. After the meeting, Coggin asked the Board if it would permit Hammett to make a presentation on Education Funding's behalf, and the Board agreed. There was no evidence that Coggin was acting as the "agent" of Hammett or Education Funding in making that request of the Board. After hearing Hammett's presentation, the Board voted to use Education Funding for its 2009 fundraising drive.

Based on the foregoing evidence, the trial court did not err in concluding that "[a]ll communications ... occurred in response to Republic's request for information about [Education Funding's] services," which the agreement specifically permits. Thus, the trial court did not err in concluding that Education Funding did not breach the terms of the settlement agreement by either directly or indirectly soliciting the Republic School District. The point is denied.

### Hankins as Coggin's Agent

■ Major Saver also says the trial court erred in finding that Tracy Hankins was acting as an "agent" of Coggin when she asked Hammett to telephone Coggin, because Hankins does not qualify as an agent under the law of agency in Missouri.

■ Major Saver argues that the relationship between Hankins and Coggin did not satisfy the first of three essential elements for an agency in Missouri, in that "there was no evidence that Hankins had

---

A. Correct.

4. Coggin specifically testified:
Q. Did you tell how was it [sic] that Hammett called you? Did you invite that call? Did you tell Tracey to tell him to call you, or did that call just come sometime after your conversation with Tracey?
A. No. I knew he was going to be calling.

Q. How did you know that?
A. Well between Tracey's and my conversation. Well, I'm not sure exactly what the wording was but she could have said, ["]Well, I'll have [Hammett] call you,["] or ["Hammett] will probably be calling you,["] or something to that effect. But, you know, I expected him to be calling.

any ability to alter any legal relationship between Coggin or the Foundation and Education Funding." *See State ex rel. Ford Motor Co. v. Bacon*, 63 S.W.3d 641, 642 (Mo. banc 2002).[5] Thus, says Major Saver, the trial court erred "as a matter of law" in finding that Hankins was acting as Coggin's agent.[6]

■ Whether Hankins was acting as Coggin's "agent" is a mixed question of fact and law that is highly dependent upon the trial court's credibility determinations and assessment of the evidence. As noted, Hankins testified that Coggin wanted her to ask Hammett to call him so they could finalize the details of their lunch meeting. Coggin's deposition testimony confirmed this. The court evidently believed that evidence, and we defer to the trial court's opportunity to adjudge the evidence and reach specific factual findings. *See Jarrell*, 41 S.W.3d at 46.

But in any event, even if the court erred in finding that Ms. Hankins was an agent for Mr. Coggin, Major Saver does not explain how that would warrant reversal, except to say, generally, that the finding was "an integral part of the Judgment" and that the finding of no solicitation was "based directly on these findings of fact."

We are not persuaded that the trial court's finding of "no solicitation" was "based directly" upon its finding that Hankins acted as Coggin's agent; nor do we believe that it was an "integral part" of the judgment. In fact, we think that it was actually somewhat immaterial to the judgment. The trial court's determination that Hammett did not solicit the fundraising business of Republic was based on its findings that Hankins twice approached Hammett and initiated contact, that Coggin asked Hammett to call him to set up a lunch meeting, and that this ultimately led to the Foundation requesting a presentation from Mr. Hammett. Point denied.

### Coggin as a "Decision Maker"

■ Similarly, Major Saver also says the trial court erred in finding that Mr. Coggin was a "decision maker." Major Saver says the court's findings in this regard are incorrect and inconsistent and that because they are "integral" to the judgment, this also warrants reversal.

Mr. Hammett was prohibited by the settlement agreement from initiating either direct or indirect contact with the individual or individuals who are charged with making fundraising decisions at certain schools, including Republic, *i.e.*, the "decision makers." The trial court found that Coggin, as president of the Foundation that ultimately makes those decisions, was a "decision maker" for purposes of the agreement and that

> [a]ll communications between [Education Funding] and Stan Coggin occurred in his capacity as the President

---

5. There are three elements for an agency relationship in Missouri: 1) the "agent holds a power to alter legal relations between the principal and a third party"; 2) the "agent is a fiduciary with respect to matters within the scope of the agency"; and 3) the "principal has the right to control the conduct of the agent with respect to matters entrusted to the agent." *Ford Motor Co.*, 63 S.W.3d at 642 (quoting the RESTATEMENT (SECOND) OF AGENCY §§ 12–14 (1958)). The absence of any of these elements will defeat the purported agency relationship. *Id.*

6. It appears to us that the trial court was utilizing the colloquial definition of "agent," as opposed to the legal definition. *Webster's* defines "agent" as "one who is authorized to act for or in the place of another." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 22 (10th ed.1993). Here, Coggin requested Hankins to act for him and to ask Hammett to call him; thus, she was acting as his "agent" in the colloquial sense.

of, and on behalf of the ... Foundation, and therefore in his capacity as a "decision maker."

Again, Major Saver fails to show how, even if the court erred in finding that Coggin was a "decision maker," that warrants reversal. The trial court appeared to recognize that the finding was not crucial to the ultimate decision. Although the court found that Coggin was acting as a "decision maker" in his capacity as president of the Foundation, the court also pointed out that "if Stan Coggin is *not* a 'decision maker' then no evidence has been admitted that a solicitation occurred." In other words, if Coggin were deemed *not* to be a decision maker, then the communications between Hammett and Coggin still could not be viewed as a violation of the settlement agreement, because it prohibited only the solicitation of a "decision maker."

Under Major Saver's theory that only the Foundation is a "decision maker" for purposes of the settlement agreement, none of Hammett's communications with either Hankins or Coggin could be viewed as improper solicitation. As found by the trial court, Hankins initiated the solicitation of information about Education Funding but she was not a "decision maker," and so no communication with her would breach the settlement agreement. Furthermore, the court found that if Coggin was *not* a "decision maker," then no evidence had been admitted demonstrating that a solicitation occurred.

Because the evidence showed that Hankins initiated the contact with Hammett and because, in any event, we are not persuaded that the question of whether Coggin was a decision maker was critical to the trial court's decision, this point is denied.

### Conclusion as to Major Saver's Appeal

Based on the foregoing, we affirm the trial court's judgment in favor of Education Funding based on its determination that Education Funding did not violate the settlement agreement by soliciting the Republic School District.

### Education Funding's Cross–Appeal

▮▮▮▮ In its cross-appeal, Education Funding contends that the trial court erred in its award of attorneys' fees and also asks this court to award it damages due to Major Saver's "frivolous" appeal.

### Attorneys' Fees

The settlement agreement in this case permits the recovery of the prevailing party's "reasonable" attorneys' fees. Paragraph 10 provides that

[i]f a lawsuit is filed seeking to enforce or recover for a claim of a breach of this agreement, the prevailing party shall be entitled to its *reasonable* attorneys' fees.

(Emphasis added.) The trial court found that Education Funding's attorneys' fees were incurred pursuant to its defense of claims related to the settlement agreement and that the fees "are reasonable." The court further found that pursuant to Paragraph 10, Education Funding "is entitled to an award of $10,000 for the reimbursement of such attorneys' fees." The court awarded Education Funding $10,000 in attorneys' fees.

Education Funding says the trial court erred in "inexplicably" awarding it only $10,000 in attorneys' fees despite admitting its attorneys' fee statement for $23,191.90 into evidence and finding that its attorneys' fees were "reasonable" and warranted under the provisions of the settlement agreement. Education Funding argues, in essence, that the trial court's decision to award an amount of attorneys' fees that is less than the amount it found

to be reasonable is inconsistent (although it does not explicitly state that). It asks this court to award the full amount of its attorneys' fees, $23,190.90.

 "Although attorney's fees are generally allowed when authorized by contract or statute, the question of whether to award such fees is left to the broad discretion of the trial court." *Bldg. Erection Servs. Co. v. Plastic Sales & Mfg. Co., Inc.*, 163 S.W.3d 472, 480 (Mo.App.2005). "We will not disturb that determination absent an abuse of discretion." *Id.* "To demonstrate an abuse of discretion, the complaining party must show the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Howard v. City of Kansas City*, 332 S.W.3d 772, 792 (Mo. banc 2011). In reviewing the amount of an award of attorneys' fees, we are mindful that the trial court is deemed to be an expert on the necessity, *reasonableness,* and the value of attorneys' fees.[7] *Manfield v. Auditorium Bar Grill, Inc.*, 965 S.W.2d 262, 268 (Mo. App.1998).

Here, Education Funding fails to demonstrate that it was an abuse of the trial court's discretion to award $10,000 in attorneys' fees despite stating that the Defendant's attorneys' fees (which actually totaled $23,190.90) "are reasonable." We cannot say as a matter of law that the use of the term "reasonable" by the trial court had the precise meaning of the word "reasonable" as used in the contract. The word "reasonable" is inherently somewhat equivocal and subject to contextual interpretation. We do not find the court's ruling to be inconsistent; Education Funding

does not persuade us that the trial court meant anything other than that it found $10,000 to be a "reasonable" amount of attorneys' fees after consideration of all the "reasonable" efforts of Education Funding. The trial court acted within its discretion in finding that the "reasonable" amount of attorneys' fees was $10,000. Point denied.

### *Frivolous Appeal*

 Education Funding also contends that Major Saver's appeal "was filed for an improper purpose and without reasonable cause and, therefore, this court should find it a frivolous appeal and award damages as it deems just and proper."

 This court is authorized to determine whether an appeal is frivolous, and if so, to award damages as it deems just and proper. Rule 84.19. "An appeal is frivolous if it presents no justiciable question and is so readily recognizable as devoid of merit on the face of the record that there is little prospect that it can ever succeed." *Rutter v. Bugg (In re Estate of Downs )*, 242 S.W.3d 729, 734 (Mo.App. 2007). We will award damages under Rule 84.19 "only where such damages will serve (1) to prevent congestion of the appellate court dockets with meritless cases ... and (2) to compensate respondents for the expenses they incur in the course of defending these meritless appeals." *Id.* (internal quotations omitted).

Education Funding claims that Major Saver's grounds for appeal "cannot prevail" and that "the appeal was filed for the improper purpose of stalling for time," in that the non-solicitation clause is set to expire, by its own terms, on August 31,

7. "In calculating the reasonable value of legal services," the trial court is instructed to consider such factors as "the time spent, nature and character of services rendered, nature and importance of the subject matter, degree of responsibility imposed on the attorney, value of property or money involved, degree of professional ability required and the result." *Manfield*, 965 S.W.2d at 268 (citations and quotations omitted).

2012. Because of this appeal, Education Funding says, it is unable to respond to requests for bids from other school districts until after this case is decided without potentially subjecting itself to other lawsuits. Education Funding asserts that Major Saver's appeal "was filed for an improper purpose to gain a monetary advantage, by stalling for time, and constitutes a misuse of the court's appellate process," and, thus, the appeal should be deemed frivolous, and damages should be assessed in its favor.

We reject this claim. Education Funding fails to demonstrate that Major Saver's appeal "presents no justiciable question" and is "readily recognizable as devoid of merit." Education Funding's claims are based purely on surmise arising from its own perspective of the issues; it submits no facts or evidence in support. We do not agree that the appeal is frivolous. We presume that Major Saver honestly believed from its perspective that the contract had been breached, and honestly believed it had grounds for appeal. The point is denied.

### Motion for Attorneys' Fees on Appeal

Education Funding has filed a motion seeking to be awarded its attorneys' fees on appeal. The motion was taken with the case. Education Funding again points to Paragraph 10, which, as noted, says the "prevailing party" in a lawsuit filed to enforce or recover for a claim of breach of the agreement "shall be entitled to its reasonable attorneys' fees." Education Funding claims it is entitled to its appellate attorneys' fees, because Major Saver's appeal "continues to assert that Education Funding breached the settlement agreement" and it "has been forced to respond to Major Saver's appeal and has incurred reasonable and necessary legal fees in doing so."

"With respect to attorney's fees on appeal, a party may be allowed to recover these fees if they are based upon a written agreement that is the subject of the issues that are presented in the appeal." *Rosehill Gardens, Inc. v. Luttrell,* 67 S.W.3d 641, 648 (Mo.App.2002) (internal quotations omitted). The "prevailing party" is the party "who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of its original contention." *Mitchell v. Residential Funding Corp.,* 334 S.W.3d 477, 514 (Mo.App.2010). Because we are affirming the trial court's judgment on the "main issues" raised by Major Saver, we conclude that Education Funding, as the prevailing party, is entitled under the contract to reasonable appellate attorneys' fees.

"[A]lthough appellate courts have the authority to allow and fix the amount of attorney's fees on appeal, we exercise this power with caution, believing in most cases that the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested." *Rosehill Gardens,* 67 S.W.3d at 648. For this reason, we remand to the trial court to hold a hearing and award such amounts as it finds reasonable.

### Ruling

Based on the foregoing, we affirm the trial court's judgment in all respects. We deny the motion for damages for frivolous appeal. With regard to Education Funding's motion for attorneys' fees on appeal, we remand to the trial court to determine the reasonable amount of that award.